UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALIX CAPITAL US INC.,<br><br>    Plaintiff,<br><br>  -against-<br><br>BANC OF AMERICA SECURITIES LLC, *et al.*,<br><br>    Defendants. | No. 13-cv-4018-NRB<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO REMAND**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

I. THE EDGE ACT DOES NOT CONFER FEDERAL JURISDICTION OVER SALIX'S STATE-LAW ACTION ...............................................................................2

    A. The Funds' Bond Purchases Do Not Provide Edge Act Jurisdiction ......................2

    B. The Funds' Interest Rate Swaps Do Not Provide Edge Act Jurisdiction ...............3

    C. Defendants' Libor Submissions Do Not Provide Edge Act Jurisdiction ................5

II. THE FSIA DOES NOT CONFER FEDERAL JURISDICTION OVER SALIX'S STATE-LAW ACTION ................................................................................8

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

### Cases

*Allstate Ins. Co. v. CitiMortgage, Inc.*,
   No. 11 Civ. 1927, 2012 WL 967582 (S.D.N.Y. Mar. 13, 2012) ..............................3

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
   712 F.3d 775 (2d Cir. 2013)...........................................................................1, 3

*Arango v. Guzman Travel Advisors Corp.*,
   621 F.2d 1371 (5th Cir. 1980) ..........................................................................9

*Bank of N.Y. v. Bank of Am.*,
   861 F. Supp. 225 (S.D.N.Y. 1994) .................................................................2, 7

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp.*,
   37 Misc. 3d 1212 (2012) WL 5187653 (N.Y. Sup. Ct. Oct. 18, 2012) ....................5

*Braswell v. Invacare Corp.*,
   760 F. Supp. 2d 679 (S.D. Miss. 2010)..............................................................9

*Chambers v. Time Warner, Inc.*,
   No. 00 Civ. 2839, 2003 WL 1107790 (S.D.N.Y. Mar. 12, 2003) ...........................9

*In re Currency Conversion Fee Antitrust Litig.*,
   No. 1409, 21-95, 2003 WL 22097502 (S.D.N.Y. Sept. 10, 2003) ..........................7

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003).....................................................................................8, 9

*In re Enron Creditors Recovery Corp.*,
   422 B.R. 423 (S.D.N.Y. 2009)..........................................................................6

*Hinkle's Jeep Sales, Inc. v. Villa Enter., Inc.*,
   90 F.R.D. 49 (S.D. Fla. 1981) ..........................................................................9

*Karpova v. Snow*,
   402 F. Supp. 2d 459 (S.D.N.Y. 2005)................................................................6

*Landesbank Baden-Württemberg v. Capital One Fin. Corp.*,
   --- F. Supp. 2d ----, 2013 WL 3743161 (S.D.N.Y. July 17, 2013) ..........................7

*MBIA Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   27 Misc. 3d 1233, 2010 WL 2347014 (N.Y. Sup. Ct. Apr. 9, 2010)........................5

*Matton v. British Airways Bd., Inc.*,
   No. 85 Civ. 1268, 1988 WL 117456 (S.D.N.Y. Oct. 27, 1988) ..............................9

*Nacional Financiera, S.N.C. v. Chase Manhattan Bank, N.A.*,
   No. 00 Civ. 1571, 2001 WL 327159 (S.D.N.Y. Apr. 4, 2001)................................7

*N.M. ex rel. Foy v. Vanderbilt Capital Advisors, LLC*,
 No. 09 Civ. 0178, 2009 WL 3672921 (D.N.M. Apr. 13, 2009) ................................................2

*Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A*,
 509 F.3d 347 (7th Cir. 2007) ..................................................................................................8

*People ex rel. Cosentino v. Fed. Reserve Bank of Chi.*,
 579 F. Supp. 1261 (N.D. Ill. 1984) .........................................................................................2

*Racepoint Partners, LLC v. JPMorgan Chase Bank*,
 No. 06 Civ. 2500, 2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006) ...........................................4

*Retailers Nat'l Bank v. Harding*,
 No. 03 Civ. 4190, 2006 WL 6181282 (N.D. Cal. June 30, 2006) ..........................................2

*Ryan v. Cerullo*,
 343 F. Supp. 2d 157 (D. Conn. 2004) ....................................................................................4

*Samsun Logix Corp. v. Bank of China*,
 740 F. Supp. 2d 484 (S.D.N.Y. 2010) ....................................................................................6

*Schillinger v. Union Pac. R.R. Co.*,
 425 F.3d 330 (7th Cir. 2005) ..................................................................................................4

*Schlumberger Indus., Inc. v. Nat'l Surety Corp.*,
 36 F.3d 1274 (4th Cir. 1994) .............................................................................................9, 10

*Stamm v. Barclays Bank of N.Y.*,
 960 F. Supp. 724 (S.D.N.Y. 1997) .........................................................................................7

*Telecredit Serv. Ctr. v. First Nat'l Bank of the Fla. Keys.*,
 679 F. Supp. 1101 (S.D. Fla. 1988) .......................................................................................5

*Vivas v. The Boeing Co.*,
 Nos. 06 C 3566, 06 C 3567, 06 C 3568, 06 C 6807, 07 C 0683,
 2007 WL 2409742 (N.D. Ill. Aug. 21, 2007) .........................................................................9

**Statutes**

12 U.S.C. § 632 ............................................................................................................................2, 5

28 U.S.C. § 1330(a) ..................................................................................................................9, 10

28 U.S.C. § 1441(d) .......................................................................................................................10

**PRELIMINARY STATEMENT**

Defendants' assertion of jurisdiction under the Edge Act and the Foreign Sovereign Immunities Act ("FSIA") stretches those statutes well beyond their breaking points. Contrary to Defendants' assertion, Salix's Amended Complaint does not change the facts to evade Edge Act jurisdiction. Instead, the Amended Complaint clarifies the allegations in the original Complaint. It explains, for example, that while some trades were executed on behalf of the FrontPoint Funds in Ireland, those trades involved Euribor and are not at issue. Defendants also make much of the fact that Salix Capital Ltd. is not a plaintiff in the Amended Complaint. But the presence of a foreign plaintiff in this case has nothing to do with Edge Act jurisdiction.

The relevant question for purposes of the Edge Act is simple: were any of the Funds' transactions with the National Bank Defendants foreign? Whichever complaint is considered, the answer to that question is "no." Because the Funds' transactions with the National Bank Defendants were purely domestic, Edge Act jurisdiction is lacking. *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 784 (2d Cir. 2013) ("*AIG*"). Defendants attempt to distract the Court from the relevant inquiry, and argue that Edge Act jurisdiction exists because the setting of Libor is foreign. The mere fact that this case involves the setting of Libor—which is linked to hundreds of trillions of dollars in financial instruments—does not provide this Court with Edge Act jurisdiction. A contrary rule would eviscerate the Edge Act's narrow conferral of federal jurisdiction.

Defendants also fail to demonstrate that this Court has FSIA jurisdiction. Because the purported foreign sovereign, Royal Bank of Scotland Group plc ("RBS Group"), has been dismissed, remand of Salix's claims is proper. All of the claims in both the original and amended complaints are state law claims that this Court has not yet addressed.

**ARGUMENT**

I.  **THE EDGE ACT DOES NOT CONFER FEDERAL JURISDICTION OVER SALIX'S STATE-LAW ACTION**

Far more than "'a scintilla of doubt'" exists "as to whether the transactions out of which [this] lawsuit arises are sufficiently international to meet the requirements of 12 U.S.C. § 632." *N.M. ex rel. Foy v. Vanderbilt Capital Advisors, LLC*, No. 09 Civ. 0178, 2009 WL 3672921, at *5 (D.N.M. Apr. 13, 2009).[1]  Defendants' Edge Act removal clearly fails:  (a) the Funds' bond purchases did not involve any national bank; (b) the interest rate swaps between the Funds and the National Bank Defendants were purely domestic transactions; and (c) Defendants' Libor submissions are not the proper focus of the Edge Act inquiry, and do not qualify as "transactions involving international or foreign banking" or "foreign financial operations" under the Edge Act.

A.  **The Funds' Bond Purchases Do Not Provide Edge Act Jurisdiction**

Salix's state law claims arise out of the Funds' basis package investments with various Defendants.  The Funds entered into interest rate swaps in which they contracted to receive floating-rate payments tied to USD Libor in exchange for fixed-rate payments.  FAC ¶ 6.  The Funds simultaneously purchased corporate bonds and entered into credit default swaps.  *Id.* ¶ 7.  Contrary to Defendants' assertion, *see* Opp'n at 10 (the "purchases of bonds . . . were tied to LIBOR"), the bonds were "fixed-rate" and were "funded at a spread to the federal funds rate," which is set by the Federal Reserve and thus not subject to manipulation."  FAC ¶¶ 7, 9.

The Funds' purchase of fixed-rate corporate bonds cannot support Edge Act jurisdiction because no national bank served as a counterparty to those transactions.  *See* FAC Ex. B.  For

---

[1]  The Edge Act is "construed narrowly."  *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 232 n.15 (S.D.N.Y. 1994); *see also Retailers Nat'l Bank v. Harding*, No. 03 Civ 4190, 2006 WL 6181282, at *4 (N.D. Cal. June 30, 2006) (same).  Courts have long recognized that the Edge Act provides only "a limited grant of federal jurisdiction," *People ex rel. Cosentino v. Fed. Reserve Bank of Chi.*, 579 F. Supp. 1261, 1265 (N.D. Ill. 1984), and special caution is required because it "transforms what would otherwise be a state court action into a claim arising under the laws of the United States."  *N.M. ex rel. Foy*, 2009 WL 3672921, at *3.

Edge Act jurisdiction, the Second Circuit requires that "the suit must have a federally chartered corporation as a party and the suit must arise out of an offshore banking or financial transaction *of that federally chartered corporation*." *AIG*, 712 F.3d at 784 (emphasis added).  Because the only relevant considerations are the "corporation organized under the laws of the United States" and its "necessary offshore banking transaction[s]," *id.* at 780, Salix's claims against non-national banks are irrelevant for the purposes of assessing Edge Act jurisdiction.  *Id.*

It is not sufficient, as Defendants maintain, that certain "affiliates" of the National Bank Defendants were bond counterparties.  *See* Opp'n at 16-17.  As Judge Rakoff recently held, the "plain language" of the Edge Act does not "include transactions of domestic affiliates, which are themselves separate corporations not covered by the Edge Act." *Dexia SA/NV v. Bear, Stearns & Co.*, --- F. Supp. 2d ----, 2013 WL 2136508, at *3 (S.D.N.Y. May 17, 2013) (rejecting Edge Act jurisdiction where affiliates of JPMorgan Chase Bank engaged in the offshore banking transactions); *see also Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11 Civ. 1927, 2012 WL 967582, at *3-4 (S.D.N.Y. Mar. 13, 2012) (national bank defendant itself, not an affiliate, "must have potential liability on claims arising out of transactions involving international or foreign banking").  Accordingly, irrespective of whether the Funds' purchases of bonds were "financial operations," Opp'n at 16-17, those purchases cannot provide the basis for Edge Act jurisdiction.

### B.     The Funds' Interest Rate Swaps Do Not Provide Edge Act Jurisdiction

Similarly, the interest rate swaps entered into by the Funds and the National Bank Defendants cannot support Edge Act jurisdiction.  Those transactions were entirely domestic: they involved *New York*-based managers acting on behalf of *Connecticut*-based Funds, which contracted with *U.S.*-based national banks, following communications in the *United States*, to enter into agreements to swap fixed rate payments for floating rate payments tied to *U.S.* Dollar Libor.  *See* FAC ¶¶ 2, 18-22, 24(b), 29(b), 36-37; *see also* Mem. at 6-12.

3

Defendants put much focus on the differences between the original and amended complaints, but fail to show that any of the changes matter for purposes of the Edge Act. They point to the allegation in the original Complaint that transactions were entered into in Ireland, *see* Opp'n at 16-17, yet ignore the allegation that "[a]lmost all of the transactions at issue were executed . . . in New York." Compl. ¶ 17. In its Amended Complaint, Salix did not "disavow" these allegations, but rather clarified the relevant facts: although some trades were entered in Ireland, those involved *Euro*-denominated instruments. *See* FAC ¶ 18. Salix did not sue on any such transactions in either complaint. *Compare* Compl., Ex. A *with* FAC, Ex. A (listing identical purchases). Defendants also make noise about the dismissal of Salix Capital Ltd. *See* Opp'n at 1. But dismissal of that entity had nothing to do with Edge Act jurisdiction. Rather, Salix Capital Ltd. assigned all of its claims to Salix Capital US, and thus its inclusion in the original Complaint was a scrivener's error.

Contrary to Defendants' assertion, the Court may properly consider these clarifications and corrections in deciding Salix's motion to remand. *See Schillinger v. Union Pac. R.R. Co.*, 425 F.3d 330, 333 (7th Cir. 2005) ("[A]n amendment that is made for legitimate purposes may be a proper ground for a remand . . . . The correction of a clerical mistake falls into [this] category, and the district court would properly have granted a motion to remand if plaintiffs had amended their complaint to correct the mistake."); *Ryan v. Cerullo*, 343 F. Supp. 2d 157, 159 (D. Conn. 2004) (a district court "may allow a plaintiff to 'clarify' his or her complaint after removal in order to assist the court in evaluating the jurisdictional facts existing at the time of removal").

The Funds' purchases of *U.S.* Dollar Libor financial instruments from other domestic entities for portfolios held in, and managed from, New York do not constitute "international or foreign" transactions under the Edge Act. *See Racepoint Partners, LLC v. JPMorgan Chase*

4

*Bank*, No. 06 Civ. 2500, 2006 WL 3044416, at *3 (S.D.N.Y. Oct. 26, 2006) (note "issued in United States dollars" pursuant to agreement in which the seller, plaintiff investors, and defendant trustee were U.S. entities did not have "any foreign or international involvement" as required by the Edge Act); *Lazard Freres & Co. First Nat'l Bank of Md.*, No. 91 Civ. 0628, 1991 WL 221087, at *2 (S.D.N.Y. Oct. 15, 1991) (the Edge Act requires "a banking arrangement between a federally chartered bank and a foreign party").[2]

### C. Defendants' Libor Submissions Do Not Provide Edge Act Jurisdiction

Defendants are left to contend that their Libor quotes to the BBA qualify as "transactions involving international or foreign banking . . . or foreign financial operations" sufficient to warrant Edge Act jurisdiction. Defendants' argument does little more than distort the statute.

First, the National Bank Defendants' Libor submissions cannot be the basis of the Edge Act analysis. Such an argument assumes that federal jurisdiction would exist "if any part of [a claim] arises out of transactions involving international or foreign banking" or "even if 'the international or foreign banking activity [is] not central to the case.'" Removal Notice ¶ 17. But the Second Circuit specifically rejected this expansive interpretation in *AIG*. *See* Mem. at 10 & n.4; *see also Lazard Freres*, 1991 WL 221087, at *2 ("[A] district court cannot find that it has § 632 jurisdiction merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties."). The teaching of *AIG* is that a court

---

[2] The fact that the interest swaps between the Funds and National Bank Defendants were "governed by a standard form of agreement for derivatives transactions that is published by the International Swaps and Derivatives Association" is irrelevant. Opp'n at 16. ISDA's standard forms cannot transform domestic activities into "international" transactions. In fact, state courts routinely exercise jurisdiction over common law fraud actions arising from ISDA Master Agreements. *See, e.g.*, *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp.*, 37 Misc. 3d 1212(A), 2012 WL 5187653, at *3-10 (N.Y. Sup. Ct. Oct. 18, 2012); *MBIA Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 27 Misc. 3d 1233(A), 2010 WL 2347014, at *1-2, *7 (N.Y. Sup. Ct. Apr. 9, 2010). That one of the swap agreements is governed by English law, *see* Opp'n at 16, is also inconsequential. *See Basis Yield Alpha Fund*, 2012 WL 5187653, at *6 (exercising jurisdiction over ISDA swap governed by English law, noting that "there is no conflict between the applicable English and New York laws of fraud"). Ultimately, the court still "must determine the true nature of the transaction[s] at issue." *Telecredit Serv. Ctr. v. First Nat'l Bank of the Fla. Keys.*, 679 F. Supp. 1101, 1103 (S.D. Fla. 1988). Here, the relevant swap transactions were purely domestic.

should look to the relationship between plaintiffs and defendants and determine whether the pertinent "transaction" that gives rise to the liability of the nationally chartered banks is foreign in nature. Here, as outlined above, the relevant swap transactions were purely domestic.

Even if Defendants' Libor submissions are considered, submitting quotes to a trade association does not qualify as a "transaction" under the Edge Act. Defendants concede that "LIBOR submissions involve no buying, selling, or competing." Opp'n at 19. Instead, they resort to the dictionary, claiming that a "transaction" is "any activity involving two or more persons," including "communicative activity." *Id.* But the first, and most common, definition of "transaction" in the very dictionary cited by Defendants is "[t]he act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract"—a definition their submissions do not satisfy. *See* Black's Law Dictionary 1635 (9th ed. 2009).

No court has ever adopted Defendants' proffered definition of "transactions involving international or foreign banking" under the Edge Act.[3] If any "communication" regarding the setting of Libor were sufficient, federal jurisdiction would exist over *any* claim against a national bank relating in any way to Libor, which is linked to hundreds of trillions of dollars in financial instruments. Such an interpretation would significantly inflate federal jurisdiction and eviscerate the narrow reading of the statute. This "strained and slender" construction is nothing more than "a chimera sprung whole out of the Banks' deft lawyerly imagination." *Samsun Logix Corp. v. Bank of China*, 740 F. Supp. 2d 484, 493-94 (S.D.N.Y. 2010) (rejecting similar argument).

It is also evident that Defendants' Libor submissions do not involve "international or foreign banking." Defendants do not dispute that their Libor quotes are not a "traditional

---

[3] While the cases Defendants identify recite the entire Black's Law Dictionary definition, *see* Opp'n at 19 n.10, they do not predicate their holdings upon the expansive "any activity" portion. *See In re Enron Creditors Recovery Corp.*, 422 B.R. 423, 436 (S.D.N.Y. 2009) ("[t]he redemption of the Notes was a 'transaction'"); *Karpova v. Snow*, 402 F. Supp. 2d 459, 468 n.1 (S.D.N.Y. 2005) ("Plaintiff's solicitation of funds" was a "transaction").

banking activity," or that numerous courts have limited the "banking" prong of the Edge Act accordingly. Defendants instead claim that this "gloss" has not been "endorsed" by courts within the Second Circuit. *See* Opp'n at 19. They are wrong. *See In re Currency Conversion Fee Antitrust Litig.*, No. 1409, 21-95, 2003 WL 22097502, at *2 (S.D.N.Y. Sept. 10, 2003) ("The Edge Act limits its jurisdiction to transactions . . . that can be characterized as traditional banking activities."); *Nacional Financiera, S.N.C. v. Chase Manhattan Bank, N.A.*, No. 00 Civ. 1571, 2001 WL 327159, at *3 (S.D.N.Y. Apr. 4, 2001) ("courts require the existence of a traditional banking activity"); *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 232 (S.D.N.Y. 1994) (transaction must be "within the realm of those 'characterized as traditional banking activities'").

When they move off their "banking" argument, Defendants spend the majority of their brief arguing that Salix's "claims arise out of the international or foreign financial operation of setting Libor." Opp'n at 10. But courts have construed the "financial operations" prong narrowly, limiting it to acts of fundraising in some form. *See* Mem. at 15-16 (collecting cases). While Defendants insist that courts *ought* to interpret this provision more broadly, the cases they cite involved transactions to raise capital or securities transactions. *See* Opp'n at 12 n.6. Indeed, the very case Defendants rely upon to argue that the phrase "financial operations" is to be "given a general or dictionary meaning," Opp'n at 15, specifically quotes from Black's Law Dictionary to the effect that "'financial operations' are commonly understood as those operations that 'provide . . . capital or loan money as needed to carry on business.'" *Stamm v. Barclays Bank of N.Y.*, 960 F. Supp. 724, 728 (S.D.N.Y. 1997). And, just last month, this District rejected Edge Act jurisdiction because the "[s]ale of a security as a good, without a connection to raising capital, is not normally considered a 'financial operation.'" *Landesbank Baden-Württemberg v. Capital One Fin. Corp.*, --- F. Supp. 2d ----, 2013 WL 3743161, at *3 (S.D.N.Y. July 17, 2013).

7

Thus, absent any connection to the raising of capital, Defendants' Libor submissions cannot meet the "financial operations" prong of the Edge Act. Indeed, given that Defendants cannot meet any part of the "transactions involving international or foreign banking" or "foreign financial operations" requirement, remand is fully warranted.

## II. THE FSIA DOES NOT CONFER FEDERAL JURISDICTION OVER SALIX'S STATE-LAW ACTION

Remand is also warranted because no Defendant in this case is a foreign sovereign under the FSIA. Defendants do not contest Royal Bank of Scotland plc's ("RBS PLC") status as a non-foreign sovereign. Nor do they dispute that RBS PLC is a proper Defendant here.[4] Instead, they argue that the Court *must* retain this case because RBS Group, a purported "foreign state," was a defendant for a few weeks at the onset of this case.[5]

Defendants fail to cite a single case holding that a court is required by the FSIA to retain jurisdiction after the foreign sovereign defendant is dismissed. Instead, Defendants misleadingly cite to *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), and *Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A*, 509 F.3d 347 (7th Cir. 2007), cases that considered a defendant's change in "status." But the "status" at issue was whether a once-sovereign became a non-sovereign due to real-world changes either leading up to or during the case. Such cases do not speak to the situation addressed by many others, where the relevant entity *is removed from the case entirely*. Under these circumstances, there is no federal interest in the case because there is *zero* chance the court will *ever* be called on to determine sovereign immunity.[6]

---

[4] Defendants' suggestion that the naming of RBS PLC is "gamesmanship" is baseless. Opp'n at 22 & n.12. The BBA website lists RBS Group as a USD Libor panel bank. *See* Mem. at 4. Accordingly, there originally was ambiguity as to which RBS entity was responsible for suppressing USD Libor.

[5] Tellingly, Defendants did not even raise this argument when another plaintiff recently voluntarily dismissed purported foreign sovereigns. *See* Opp'n, *Maragos v. Bank of Am. Corp.*, No. 12-cv-6294 (E.D.N.Y. Feb. 22, 2013), ECF No. 63.

[6] In fact, this District has held that "[o]nce a foreign state sells its interest in a defendant, agency or

8

As demonstrated by Defendants' own authority, courts routinely remand cases to state court under these circumstances, even when original removal was proper. *See, e.g.*, *Hinkle's Jeep Sales, Inc. v. Villa Enter., Inc.*, 90 F.R.D. 49, 52 (S.D. Fla. 1981); *see also Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1377 n.6 (5th Cir. 1980) (when sovereign is dismissed, "the source of federal removal jurisdiction is thereby withdrawn from the case, the district court is free to exercise its discretion to remand the remaining defendants to state court, and in most instances will no doubt do so"). Contrary to Defendants' assertion, remand remains the rule after *Dole*. *See Vivas v. The Boeing Co.*, Nos. 06 C 3566, 06 C 3567, 06 C 3568, 06 C 6807, 07 C 0683, 2007 WL 2409742, at *7 (N.D. Ill. Aug. 21, 2007) (after determining that defendant qualified as "foreign state" under *Dole* and dismissing that defendant, remanding remaining consolidated cases "[b]ecause there is no remaining basis for federal jurisdiction").

Defendants make much of the fact that RBS Group was dismissed by amendment of Salix's complaint. *See* Opp'n at 21-22. That Salix voluntarily dismissed RBS Group by amendment rather than Rule 41 as in *Hinkle*, is a distinction without a difference. *See Braswell v. Invacare Corp.*, 760 F. Supp. 2d 679, 683 (S.D. Miss. 2010) (plaintiff who filed amended complaint dropping defendant "appropriately considered to have voluntarily dismissed [defendant] in accordance with Federal Rule of Civil Procedure 41(a)(2).") (collecting cases).[7]

Defendants' attack on *Schlumberger Industries, Inc. v. National Surety Corp.*, 36 F.3d 1274 (4th Cir. 1994), is also misguided. Although the Fourth Circuit concluded that pendent party jurisdiction does not exist under the FSIA's original jurisdiction provision, 28 U.S.C. §

---

instrumentality, congressional concern with the sensitivity of actions involving foreign states is no longer implicated. . . . There is no basis for stretching the dictates of the FSIA beyond their intended purpose."). *Matton v. British Airways Bd., Inc.*, No. 85 Civ. 1268, 1988 WL 117456, at *3 (S.D.N.Y. Oct. 27, 1988). As above, this logic applies with even greater force here.

[7] *Cf. Chambers v. Time Warner, Inc.*, No. 00 Civ. 2839, 2003 WL 1107790, at *2 (S.D.N.Y. Mar. 12, 2003) ("[A] Rule 15(a) amendment eliminating a claim is the same as a Rule 41(a) voluntary dismissal of a claim.").

1330(a), this case was removed pursuant to the FSIA's *removal* provision, *id.* § 1441(d). The Fourth Circuit stated that even if "jurisdiction under section 1441(d) is broader than that under section 1330(a) and allows, in appropriate cases, for some form of pendent party jurisdiction, we think that the district court's exercise of pendent party jurisdiction here was without basis." *Id.* at 1282-83. Thus, contrary to Defendants' suggestion, the outcome of *Schlumberger* as relevant to this case does not turn on the availability of pendent party jurisdiction.

Even if this Court determines that remand is discretionary, it should nonetheless remand Salix's state law claims. Contrary to Defendants' argument, remand will not undermine judicial economy. Although this Court has gained familiarity with the background to Defendants' suppression of Libor, it has not yet ruled upon any of Salix's claims, including breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud.[8] Defendants also assert that coordination of discovery will further judicial economy, but overlook that discovery in the Libor MDL has not yet commenced. Indeed, this Court itself recently concluded that "it would not significantly compromise judicial economy for another court to start afresh on plaintiffs' state law claim." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, --- F. Supp. 2d ----, 2013 WL 1285338, at *59 (S.D.N.Y. Mar. 29, 2013). Simply put, Defendants point to no change in circumstance over the past few months that suddenly counsels in favor of the Court retaining these state law claims.

## CONCLUSION

For the reasons set forth above, Salix respectfully requests that the Court remand this action to the Supreme Court of the State of New York.

---

[8] Although this Court ruled on an unjust enrichment claim in the Libor MDL, Salix's unjust enrichment claim will raise different issues, as, unlike the Exchange-Based Plaintiffs, Salix had a direct relationship with the Defendants against whom it asserts that claim. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, --- F. Supp. 2d ----, 2013 WL 1285338, at *60-61 (S.D.N.Y. Mar. 29, 2013) (dismissing unjust enrichment claim because relationship between plaintiffs and defendants was too attenuated).

DATED:   New York, New York
         August 8, 2013

          Respectfully submitted,

          QUINN EMANUEL URQUHART & SULLIVAN, LLP

          By: /s/ Daniel L. Brockett
          Daniel L. Brockett
          Daniel P. Cunningham
          Steig D. Olson
          51 Madison Avenue, 22nd Floor
          New York, New York  10010-1601
          Telephone:  (212) 849-7000
          Fax:  (212) 849-7100
          danbrockett@quinnemanuel.com
          danielcunningham@quinnemanuel.com
          steigolson@quinnemanuel.com

          *Of Counsel:*

          Jeremy D. Andersen (*pro hac vice*)
          David Armillei
          865 South Figueroa Street, 10th Floor
          Los Angeles, California 90017
          Telephone:  (213) 443-3000
          Fax:  (213) 443-3100
          jeremyandersen@quinnemanuel.com
          davidarmillei@quinnemanuel.com

          Matthew J. MacDonald
          1299 Pennsylvania Avenue, NW
          Suite 825
          Washington, D.C. 20004
          Telephone:  (202) 538-8000
          Fax:  (202) 538-8100
          mattmacdonald@quinnemanuel.com

          *Attorneys for Plaintiff Salix Capital US*

**CERTIFICATE OF SERVICE**

  I, Daniel L. Brockett, hereby certify that on August 8, 2013, I electronically filed a true and correct copy of the foregoing by using the Court's CM/ECF system and that I caused the foregoing document to be electronically served on the following CM/ECF participants:

DAVIS POLK & WARDWELL
Arthur J. Burke
Paul S. Mishkin
Robert F. Wise, Jr.
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
Fax: (212) 450-3352
arthur.burke@dpw.com
paul.mishkin@dpw.com
rwise@dpw.com

*Attorneys for Defendants Banc of America Securities LLC, Bank of America Corporation, and Bank of America, N.A.*

SULLIVAN & CROMWELL LLP
David H. Braff
Jeffrey T. Scott
Matthew S. Fitzwater
Matthew J. Porpora
Yvonne S. Quinn
125 Broad Street
New York, NY 10004
Tel: (212) 558-4000
Fax: (212) 558-3588
braffd@sullcrom.com
scottj@sullcrom.com
fitzwater@sullcrom.com
porporam@sullcrom.com
quinny@sullcrom.com

BOIES, SCHILLER & FLEXNER LLP
Jonathan D. Schiller
Leigh Mager Nathanson
575 Lexington Avenue
New York, NY 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
jschiller@bsfllp.com
lnathanson@bsfllp.com

Michael Brille
5301 Wisconsin Avenue, NW
Suite 800
Washington, DC 20015
Tel: (202) 237-9608
Fax:  (202) 237-6131
mbrille@bsfllp.com

*Attorneys for Defendants Barclays Bank plc
and Barclays Capital, Inc.*

COVINGTON & BURLING LLP
Andrew A. Ruffino
620 Eighth Avenue
New York, NY 10018
Tel: (212) 841-1000
Fax: (212) 841-1010
aruffino@cov.com

*Attorneys for Defendants Citibank, N.A.,
Citigroup Global Markets, Ltd., and
Citigroup, Inc.*

PAUL WEISS RIFKIND WHARTON & GARRISON LLP
Andrew C. Finch
Moses Silverman
Ankush Khardori
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
Fax: (212) 492-0460
afinch@paulweiss.com
msilverman@paulweiss.com
akhardori@paulweiss.com

*Attorneys for Defendants Deutsche Bank AG and
Deutsche Bank Securities, Inc.*

CLIFFORD CHANCE LLP
Robert G. Houck
Alejandra de Urioste
James Drew Miller
31 West 52nd Street
New York, NY 10019
Tel: (212)-878-8000
Fax: (212)-878-8375
robert.houck@cliffordchance.com
alejandra.deurioste@cliffordchance.com
jim.miller@cliffordchance.com

WILMER, CUTLER, PICKERING, HALE & DORR LLP
David Sapir Lesser
Fraser Lee Hunter, Jr.
Jamie Stephen Dycus
Alan Schoenfeld
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Tel: (212) 230-8800
Fax: (212) 230-8888
david.lesser@wilmer.com
fraser.hunter@wilmerhale.com
jamie.dycus@wilmerhale.com
alan.schoenfeld@wilmerhale.com

*Attorneys for Defendant Royal Bank of Scotland plc*

GIBSON, DUNN & CRUTCHER LLP
Peter Sullivan
Lawrence Jay Zweifach
Rachael Alden Lavery
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com
rlavery@gibsondunn.com

 *Attorneys for Defendant UBS AG*

      I further certify that on August 8, 2013, I caused the foregoing document to be served on the following non-CM/ECF participants by first class mail:

CAHILL GORDON & REINDELL LLP  
Herbert S. Washer  
80 Pine Street  
New York, NY 10005

*Attorneys for Defendants Credit Suisse Group AG,*  
*Credit Suisse International, and*  
*Credit Suisse Securities (USA) LLC*

SIMPSON THACHER & BARTLETT LLP  
Thomas C. Rice  
425 Lexington Avenue  
New York, NY 10017

*Attorneys for Defendants JPMorgan Chase & Co.,*  
*JPMorgan Chase Bank, N.A., and J.P. Morgan Securities LLC*

Citigroup Global Markets Inc.  
Attn: Litigation Department  
388 Greenwich Street  
New York, NY 10013

                                        /s/ Daniel L. Brockett