**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

August 20, 2014

ELECTRONICALLY FILED

Honorable Naomi Reice Buchwald
United States District Court
for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re:   Salix Capital US Inc. v. Banc of America Securities LLC, et al., 1:13-cv-4018 (S.D.N.Y.)

Dear Judge Buchwald:

    We write on behalf of plaintiff Salix Capital US Inc. ("Salix") in response to the pre-motion letters submitted by the Defendant banks requesting leave to file motions to dismiss certain claims brought in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262. As explained below, Defendants have identified no valid basis for dismissal of Salix's Amended Complaint ("Complaint"), which is mostly focused on breach of contract and unjust enrichment claims arising out of interest rate swap agreements with counterparty Defendants. Should the Court believe that full briefing is necessary to resolve the issues raised by the Defendants, we look forward to the opportunity to do so.

    ***Amending the Complaint.*** Defendants do not challenge the core of Salix's Complaint. Defendants concede that Salix's breach of contract and unjust enrichment claims are asserted only as to Defendant counterparties and that these claims are governed by the *six-year* statutes of limitations applied in New York and Connecticut.[1] Such claims are expressly authorized by this Court's ruling in *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR III")*, 2014 WL 2815645, at *20 (S.D.N.Y. June 23, 2014). However, to address concerns expressed in the Court's opinions and other issues raised in the Defendants' letters, Salix intends to amend its

---

[1] Salix is suing as assignee of certain of the FrontPoint Funds, which were headquartered in Connecticut during the relevant period. The trades at issue were carried out by traders located in New York.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Honorable Naomi Reice Buchwald
August 20, 2014

Complaint as to other claims in accordance with the schedule proposed in the letter from Richard J. Leveridge to the Court on August 20, 2014. Any briefing schedule on a motion to dismiss should take into account that amendment, which will be filed by the jointly proposed deadline.

*__Salix's contract-based claims are timely, and well-pled.__* Salix's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are timely under Connecticut's *six-year* statute of limitations. Conn. Gen. Stat. § 52-576. They are also timely under New York law. Defendants do not appear to seek dismissal of these claims, nor do they list this case as among those for which a more definitive statement is required. App. to Defendants' August 13, 2014 Pre-Motion Submissions at 9-10 (ECF No. 593-1, Aug. 13, 2014). Salix also alleges breaches of express contractual provisions by Defendant bank counterparties, unlike certain other plaintiffs.

*__Salix's unjust enrichment claims are timely, and well-pled.__* Here, again, Salix brings claims solely against Defendant banks with which it transacted directly. Defendants thus do not appear to seek dismissal of these claims, nor do they list this case as among those for which a more definitive statement is required on these claims. App. to Defendants' August 13, 2014 Pre-Motion Submissions at 11-13. Instead, Defendants seek to dismiss Salix's unjust enrichment claims on timeliness grounds, Letter from Joel Kurtzberg to Hon. Naomi Reice Buchwald (ECF No. 589, Aug. 13, 2014). Yet New York and Connecticut law both apply a *six-year* statute of limitations to unjust enrichment claims.[2] Additionally, the applicable limitations period governing Salix's claims was suspended by the filing of the unjust enrichment claims on behalf of Salix and other class members in several LIBOR class actions, including *Carpenters Pension Fund of W. Va. v. Bank of Am Corp.*, No. 11-cv-2883 (S.D.N.Y.) on April 27, 2011. *Grimes v. Hous. Auth. of the City of New Haven*, 242 Conn. 236 (1997).[3]

---

[2] *Generation Partners, LP v. Mandell*, No. FSTCV095010537S, 2011 WL 3671966, at *3 (Conn. Super. Ct. July 22, 2011) ("Unjust enrichment . . . claims are most analogous to contract claims and are subject to the six-year statute of limitations as well.") (citation omitted). New York law would provide a six-year limitations period to Salix's unjust enrichment claim for any of several reasons: (i) Salix's "unjust enrichment and breach of contract claims are based upon the same facts," *Maya NY, LLC v. Hagler*, 965 N.Y.S.2d 475, 477 (1st Dep't 2013);(ii) Salix's claims are "based on allegations of actual fraud," *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164 (1st Dep't 2003); and (iii) Salix seeks equitable relief, *see IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009).

[3] Defendants argue in a footnote that *American Pipe* tolling is inapplicable to state-law claims. Letter from Jeffrey T. Scott & David R. Gelfand to Hon. Naomi Reice Buchwald at 1 n.2, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No.11-md-2262, ECF No. 595 (S.D.N.Y. Aug. 13, 2014) (citing *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 2014 WL 463582, at *16 (S.D.N.Y. Feb. 5, 2014)). However, this is not the case, as "New York courts have . . . long embraced the principles of *American Pipe.*" *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987) (collecting cases); *see Sapirstein-Stone-Weiss Found. v. Merkin*, 950 F. Supp. 2d 621, 626 (S.D.N.Y. 2013), *reconsideration denied* (July 11, 2013) (prior federal class action tolled individual state-law (footnote continued)

Honorable Naomi Reice Buchwald
August 20, 2014

***Salix's fraud-based claims are timely, and well-pled.*** Salix's fraud claims are timely under Connecticut's three-year statute of limitations, which was suspended by Defendants' continuing wrongdoing through at least 2011. *Giulietti v. Giulietti*, 65 Conn. App. 813, 833 (2001), *cert. denied*, 258 Conn. 946 (2001) ("'[W]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed.'") (citation omitted); *Shelton v. Elite Model Mgmt., Inc.*, 812 N.Y.S.2d 745, 757-58 (Sup. Ct. 2005) ("[P]laintiffs can rely on a continuing violation theory to toll the . . . statute of limitations. . . .to the date of the commission of the last wrongful act where there is a series of continuing wrongs.") (citation omitted). As discussed above, Salix's claims were also tolled by the filing of class-action complaints, including in *Carpenters Pension Fund of W. Va.* on April 27, 2011.[4]

Defendants argue that Salix's reliance was unreasonable. Letter from Jeffrey T. Scott & David R. Gelfand to Hon. Naomi Reice Buchwald at 2 (ECF No. 595, Aug. 13, 2014) ("Scott & Gelfand Letter"). The scope of that "ask" is breathtaking. Defendants are asking the Court to rule, as a matter of law, that as early as 2007 no reasonable investor could ever have relied on LIBOR, so that every actor in this *multitrillion-dollar* market was acting irrationally. Clearly, the severe disconnect between Defendants' theory, and reality, requires *at least* waiting for discovery on this issue. This is also true with respect to reliance after May 2008 (*i.e.*, after the Court's "inquiry notice" date), given the market's continuing reliance on LIBOR. There is a difference between finding, for the purposes of inquiry notice, that investors should have begun investigating by May 2008, and deeming every market actor (including many governments) to have acted irrationally in relying on LIBOR. *See, e.g., Miller v. Am. Bureau of Shipping, Inc.*, 1998 WL 879674, at *1 (9th Cir. Dec. 16, 1998) (mem.) (reversing dismissal of fraud claims for lack of reasonable reliance based on plaintiff's being on inquiry notice).

Defendants similarly try to avoid practical realities by arguing that they lacked intent to deceive even though they knew that LIBOR was being manipulated. The Court has already rejected that distinction, finding scienter was adequately pled under the Commodity Exchange Act. *See LIBOR III*, 2014 WL 2815645, at *14. This makes sense, as "[w]here representations

---

claims); *Paru v. Mut. of Am. Life Ins. Co.*, 863 N.Y.S.2d 151, 152 (1st Dep't 2008); *Cambridge House Tenants' Ass'n v. Cambridge Dev., L.L.C.*, 2012 WL 254979 (N.Y. Sup. Ct. Jan 19, 2012).

[4] "*American Pipe* tolling is properly extended to claims of absent class members that involve the same evidence, memories, and witnesses as were involved in the initial putative class action." *Cullen*, 811 F.2d at 719. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393-94 n. 14 (1977); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("[A] related class action gives defendants full notice 'of the need to preserve evidence and witnesses respecting the claims of *all* the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise . . . . .'") (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983)); *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 734 (2d Cir. 1965) (tolling applies when prior class action "made [defendants] aware of the nature of the evidence that would be needed at trial"), *cert. denied*, 382 U.S. 816 (1965).

are made to the public at large for the purpose of influencing the action of anyone who may act upon those representations, a common-law cause of action for fraud lies in favor of any individual who acts upon them and is injured thereby." *Young v. Robertshaw Controls Co.*, 481 N.Y.S.2d 891, 893 (3d Dep't 1984). Defendants cannot escape liability for falsifying LIBOR by claiming to have borne no ill will toward any particular investor who would be harmed thereby.

Finally, Defendants also suggest it is unclear how their misconduct harmed certain plaintiffs. Whatever the merit of those arguments as to other cases, it defies common sense to apply them to Salix. As a holder of financial instruments on which it was to receive LIBOR-based payments, Salix was directly impacted by LIBOR's suppression, as alleged in its Complaint.[5] Determining precisely how much less Salix was paid is simply not a pleading burden. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 167 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 1624, 185 L. Ed. 2d 576 (U.S. 2013). Salix also alleges that it was harmed when it was forced to meet Defendants' collateral calls, terminate its swaps, and pay inflated settlement amounts to Defendants based on an artificially suppressed LIBOR.

**_Salix's interference claims are timely, and well-pled._** Salix's interference claims are timely under Connecticut's three-year statute of limitations, Conn. Gen. Stat. § 52-577, which was suspended both by the continuing nature of Defendants' wrongdoing, as discussed above, and by the continuing nature of the affected contracts themselves. *See Gaylord Hosp. v. Massaro*, 5 Conn. App. 465, 467-69 (1985) (contract claim accrues upon completion of contract term).[6] Defendants urge that Salix must allege that Defendants knew of and "*intended* to interfere with Plaintiffs' contracts or business relations." Letter from Marc J. Gottridge to Hon. Naomi Reice Buchwald at 2-3 (ECF No. 596, Aug. 13, 2014). As discussed above in the context of Salix's fraud claims, this slices the elements far too finely, as this Court has already held. *See LIBOR III*, 2014 WL 2815646, at *14 ("[I]t may suffice for plaintiffs to allege that defendants knowingly engaged in unquestionably illegitimate conduct while fully comprehending the consequences in the market."). Defendants knew that Salix held LIBOR-linked instruments, and that their conduct would impact *every* LIBOR-based instrument. Such knowledge suffices even if Defendants' focus was not on the specific positions on Salix's books. *See Jacobs v. Continuum Health Partners, Inc.*, 776 N.Y.S.2d 279, 280 (2004) ("To state a cause of action for tortious interference with prospective business advantage, it must be alleged that the conduct . . . was undertaken for the sole purpose of harming plaintiff, *or* that such conduct was wrongful or

---

[5] With respect to the aiding and abetting and conspiracy claims, Defendants assert that they neither knew of, nor substantially assisted, each other's misconduct. Scott & Gelfand Letter at 2-3. However, Salix alleges facts showing that Defendants knew of each other's false submissions, assisted this misconduct by suppressing their own submissions, and did so pursuant to a conspiracy among the LIBOR panel banks. *See, e.g.*, Amended Complaint ¶¶ 59, 69, 76, 83, 92-93, 131-135, 176-181, 311, 346.

[6] The running of the limitations period was also suspended by the filing of class-action complaints. *See* notes 3-4, *supra*.

Honorable Naomi Reice Buchwald
August 20, 2014

improper independent of the interference allegedly caused thereby.") (emphasis added) (citation omitted). Here, it would be absurd to require that Defendants have particularized intent to interfere with each of the many LIBOR-linked instruments held by Salix.[7]

Respectfully submitted,

*/s/ Daniel L. Brockett*

Daniel L. Brockett

cc: All counsel (via ECF)

---

[7] Credit Suisse suggests it is beyond the reach of courts in New York, one of the world's leading financial centers and the home of vast Credit Suisse operations. Letter from Joel Kurtzberg to Hon. Naomi Reice Buchwald (ECF No. 600, Aug. 13 2014). As described in the August 20, 2014 letter to the Court from Richard J. Leveridge on this issue, Credit Suisse's contacts with New York, including via the LIBOR-based instruments at issue in this case, amply support New York's assertion of specific jurisdiction.