**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION | 1:11-MD-2262 (NRB)<br><br>ECF Case |
| THIS DOCUMENT RELATES TO:<br><br>JOSEPH AMABILE, et al.,<br>　　　　　　Plaintiffs,<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 13-cv-01700 |
| BAY AREA TOLL AUTHORITY,<br>　　　　　　Plaintiff,<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 14-cv-03094 |
| CEMA JOINT VENTURE,<br>　　　　　　Plaintiff,<br>　　　v.<br>CHARTER ONE BANK, N.A., et al.,<br>　　　　　　Defendants. | No. 13-cv-05511 |
| THE CHARLES SCHWAB CORPORATION, et al.,<br>　　　　　　Plaintiffs,<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 13-cv-07005 |
| CITY OF HOUSTON,<br>　　　　　　Plaintiff,<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 13-cv-05616 |
| CITY OF PHILADELPHIA, et al.,<br>　　　　　　Plaintiffs.<br>　　　v.<br>BANK OF AMERICA CORPORATION, et al.,<br>　　　　　　Defendants. | No. 13-cv-06020 |

| | |
|---|---|
| CITY OF RICHMOND, et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00627 |
| CITY OF RIVERSIDE, et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00597 |
| COUNTY OF MENDOCINO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-08644 |
| COUNTY OF SACRAMENTO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-05569 |
| COUNTY OF SAN DIEGO,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00667 |
| COUNTY OF SAN MATEO, et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00625 |
| COUNTY OF SONOMA, et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-05187 |
| DARBY FINANCIAL PRODUCTS, et al.,<br>Plaintiffs,<br>v.<br>BARCLAYS BANK PLC, et al., | No. 13-cv-08799 |

<table>
<tr><td>Defendants.</td><td></td></tr>
</table>

| | |
|---|---|
| EAST BAY MUNICIPAL UTILITY DISTRICT,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-00626 |
| FEDERAL DEPOSIT INSURANCE<br>CORPORATION as Receiver for AMCORE BANK,<br>N.A., et al.,<br>Plaintiffs,<br>v.<br>BANK OF AMERICA CORP., et al.,<br>Defendants. | No. 14-cv-01757 |
| THE FEDERAL HOME LOAN MORTGAGE<br>CORPORATION,<br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-03952 |
| FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION,<br>Plaintiff,<br>v.<br>BARCLAYS BANK PLC, et al.,<br>Defendants. | No. 13-cv-03952 |
| GEORGE P. MARAGOS, in his official capacity as<br>the COMPTROLLER OF THE COUNTY OF<br>NASSAU, acting on behalf of the COUNTY OF<br>NASSAU,<br><br>Plaintiff,<br>v.<br>BANK OF AMERICA CORPORATION, et al.,<br>Defendants. | No. 13-cv-02297 |
| NATIONAL CREDIT UNION<br>ADMINISTRATION BOARD as Liquidating Agent<br>for U.S. Central Federal Credit Union, et al.,<br>Plaintiff,<br>v.<br>CREDIT SUISSE GROUP AG, et al., | No. 13-cv-07394 |

| | |
|---|---|
| Defendants. | |
| PRINCIPAL FINANCIAL GROUP, INC., et al., Plaintiff, v. BANK OF AMERICA CORPORATION, et al., Defendants. | No. 13-cv-06014 |
| PRINCIPAL FUNDS, INC., et al., Plaintiff, v. BANK OF AMERICA CORPORATION, et al., Defendants. | No. 13-cv-06013 |
| PRUDENTIAL INVESTMENT PORTFOLIOS 2, et al., Plaintiffs, v. BANK OF AMERICA CORPORATION, et al., Defendants. | No. 14-cv-04189 |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Plaintiff, v. BANK OF AMERICA CORPORATION, et al., Defendants. | No. 13-cv-05186 |
| SALIX CAPITAL US INC., Plaintiff, v. BANC OF AMERICA SECURITIES LLC, et al., Defendants. | No. 13-cv-04018 |
| SAN DIEGO ASSOCIATION OF GOVERNMENTS, Plaintiff, v. BANK OF AMERICA CORPORATION, et al., Defendants. | No. 13-cv-05221 |

## JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS DIRECT ACTION CLAIMS COVERED BY PRIOR RULINGS

# **TABLE OF CONTENTS**

PAGE(S)

PRELIMINARY STATEMENT ...........................................................................................1

I.   THE ANTITRUST CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM...........................................................................................................................2

    A.  Plaintiffs' Federal Antitrust Claims Fail Under *LIBOR I* and *II* ...............................2

    B.  Plaintiffs' State Antitrust Claims Also Fail Under the Court's Prior Rulings..............6

II.  THE *AMABILE* PLAINTIFFS' CEA CLAIMS SHOULD BE DISMISSED TO THE EXTENT THE COURT DISMISSED THE EXCHANGE-BASED PLAINTIFFS' CEA CLAIMS ..........................................................................................................................6

III. PLAINTIFFS' RICO CLAIMS MUST BE DISMISSED ...................................................9

IV. PLAINTIFFS' CONTRACT-BASED AND UNJUST ENRICHMENT CLAIMS ARE LIMITED BY *LIBOR III* ...............................................................................................12

    A.  Claims Alleged Against Certain Defendants in Their Capacity as Underwriters or Broker-Dealers Do Not Allege a Counterparty Relationship Within the Meaning of *LIBOR III* .................................................................................................................14

    B.  Claims Not Based on Transactions with Panel Banks Must Be Dismissed ..............16

V.  CONTRACT-BASED AND UNJUST ENRICHMENT CLAIMS THAT ARE TIME-BARRED MUST BE DISMISSED ...................................................................................18

    A.  Certain Contract-Based and Unjust Enrichment Claims are Time-Barred................18

        1.  Claims Subject to New York Law ....................................................................19

        2.  Claims Subject to Other States' Laws .............................................................21

    B.  None of the Alleged Tolling Doctrines Apply ..........................................................23

VI. CERTAIN UNJUST ENRICHMENT CLAIMS ARE BARRED BY THE PARTIES' CONTRACTS..................................................................................................................24

CONCLUSION...................................................................................................................25

v

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*ABB Indus. Sys. v. Prime Tech.*,
  120 F.3d 351 (2d Cir. 1997)...................................................... 19

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
  651 F.Supp.2d 155 (S.D.N.Y. 2009)........................................ 15

*AC, Inc. v. Baker*,
  622 So. 2d 331 (Ala. 1993)...................................................... 19

*Am. Gen. Life & Acc. Ins. Co. v. Underwood*,
  886 So. 2d 807 (Ala. 2004)...................................................... 19

*American Libraries Ass'n v. Pataki*,
  969 F. Supp. 160 (S.D.N.Y. 1997) .......................................... 12

*Apostolos Grp., Inc. v. Josephson*,
  No. 20733, 2002 WL 242111 (Ohio Ct. App. 2002) ............... 13

*Archut v. Ross Univ. Sch. of Veterinary Med.*,
  No. 10-1681 (MLC), 2012 WL 5867148 (D.N.J. Nov. 19, 2012)......................................... 10

*Aryeh v. Canon Bus. Solutions*,
  151 Cal. Rptr. 3d 827 (Cal. 2013)............................................ 24

*Auburn Univ. v. IBM Corp.*,
  716 F. Supp. 2d 1114 (M.D. Ala. 2010) .................................. 21

*Backpage.com, LLC v. Hoffman*,
  No. 13-cv-3952, 2013 WL 4502097 (D.N.J. Aug. 20, 2013) .................................. 12

*Baer v. Chase*,
  392 F.3d 609 ............................................................................ 19

*Bd. of Educ. of Cherry Hill v. Human Res. Microsystems, Inc.*,
  No. 09-5766 (JBS/JS), 2010 WL 3882498 (D.N.J. Sept. 28, 2010)........................ 23

*Bemis v. Estate of Bemis*,
  114 Nev. 1021 (1998) .............................................................. 19

*Berg v. Access Grp., Inc.*,
    No. 13-5980, 2014 WL 4812331 (E.D. Pa. Sept. 26, 2014) ................................... 22

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012) ........................................................................................ 17

*Binder v. Price Waterhouse*,
    923 A.2d 293 (N.J. Super. 2007) ............................................................................... 24

*Bolinger v. Bell Atlantic*,
    749 A.2d 857 (N.J. Super. 2000) ............................................................................... 24

*Bolmer v. Kocet*,
    507 A.2d 129 (Conn App. 1986) ............................................................................... 13

*Buccilli v. Timby, Brown & Timby*,
    660 A.2d 1261 (N.J. App. Div. 1995) ...................................................................... 10

*Carlton v. Hertz Corp.*,
    No. CV 12-07178 JGB (MRWx), 2013 WL 394894 (C.D. Cal. Jan. 28, 2013) ...................... 22

*Castro v. NYT Television*,
    851 A.2d 88 (N.J. App. Div. 2004) ........................................................................... 23

*Christy v Miulli*,
    692 N.W.2d 694 (Iowa 2005) ................................................................................... 24

*Cnty. of Morris v. Fauver*,
    153 N.J. 80 (1998) ...................................................................................................... 19

*Cochran v. Cochran*,
    66 Cal. Rptr. 2d 337 (Cal. App. 1997), *as modified* (Aug. 12, 1997) ....................... 19

*Cole v. Lawrence*,
    701 A.2d 987 (Pa. Super. Ct. 1997) .......................................................................... 19

*Coleman v. Coleman*,
    949 N.E.2d 860 (Ind. Ct. App. 2011) ........................................................................ 13

*Concord Assocs., L.P. v. Ent'mt Props. Trust*,
    No. 12 Civ. 1667 (ER), 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) ............................. 17, 18

*Corey Lanuza v. Medic Emergency Specialties, Inc.*,
    229 F. Supp. 2d 92 (2002) ..................................................................................... 19, 21

*Day v. Moscow*,
   769 F. Supp. 472 (S.D.N.Y. 1991) ....................................................... 24

*Defeo v. Check*,
   NO. L-3996-11, 2011 WL 4543681 (N.J. Super. Ct. Sept. 26, 2011) ..................................... 23

*Dellape v. Murray*,
   651 A.2d 638 ((Pa. Commw. Ct. 1994) ....................................................... 24

*Deutsch v. Turner Corp.*,
   317 F.3d 1005 (2003).................................................................... 22

*Diamond v. Davis*,
   680 A.2d 364 (D.C. 1996) ................................................................ 24

*Dragushansky v. Nasser*,
   No. 12 CV 9240 (TPG), 2013 WL 4647188,
   (S.D.N.Y. Aug. 29, 2013) ............................................................... 20

*Dunn v. Dunn*,
   47 Kan. App. 2d 619 (2012) .............................................................. 19

*E. W., LLC v. Rahman*,
   873 F. Supp. 2d 721 (E.D. Va. 2012) ....................................................... 22

*Elliott v. Qwest Commc'ns Corp.*,
   808 N.Y.S.2d 443 (N.Y. App. Div. 2006) .................................................. 19

*Engram v. Engram*,
   463 S.E.2d 12 (Ga. 1995)................................................................. 13

*Estate of Draper v. Bank of Am., N.A.*,
   205 P.3d 698 (Kan. 2009) ................................................................ 19

*European Cmty. v. RJR Nabisco, Inc.*,
   764 F.3d 129 (2d Cir. 2014),.............................................................. 11

*F.D.I.C. v. Dintino*,
   84 Cal.Rptr.3d 38 (Cal. App. 2008)........................................................ 19

*Fido's Fences v. Canine Fence Co.*,
   672 F. Supp. 2d 303 (E.D.N.Y. 2009) ...................................................... 6

*Flick v Wyeth LLC*,
   No. 3:12-cv-00012, 2012 WL 4458181 (W.D. Va. June 6, 2012)............................. 24

viii

*Fortech, L.L.C. v. R.W. Dunteman Co.*,
  852 N.E.2d 451 (Ill. App. 2006) .................................................................. 13

*Godwin v. Real Estate Inv. Mgmt., Inc.*,
  No. 2:00-CV-1402, 2001 WL 1681122 (S.D. Ohio Aug. 21, 2001) ...................................... 22

*Goodman v. Goldman, Sachs & Co.*,
  Civ. No. 10-1247 (FLW),  2010 WL 5186180 (D.N.J. Dec. 14, 2010) .................................. 22

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
  425 F.3d 158 (2d Cir. 2005) ...................................................................... 12

*Harry Miller Corp. v. Mancuso Chemicals Ltd.*,
  469 F. Supp. 2d 303 (E.D. Pa. 2007) .............................................................. 19

*Healy v. Beer Inst.*,
  491 U.S. 324 (1989) .............................................................................. 12

*Heldenfels Bros. Inc. v. City of Corpus Christi*,
  832 S.W.2d 39 (Tex. 1992) ........................................................................ 14

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
  01-CIV-2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) .............................................. 15

*Holmes v. Allstate Corp.*,
   No. 11 Civ. 1543, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012), *adopted by* 2012 WL 626262
  (S.D.N.Y. Feb. 27, 2012) ......................................................................... 18

*Holzrichter v. Cnty. of Cook*,
  595 N.E.2d 1237 (Ill. App. Ct. 1992) ............................................................. 6

*Hy-Vee Food Stores v. Iowa Civil Rights Comm'n*,
  453 N.W.2d 512 (Iowa 1990) ....................................................................... 24

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. July 18, 2011) .................................................... 17

*In re Koreag, Controle et Revision S.A.*,
  961 F.2d 341, 352 (2d Cir. 1992) ................................................................. 20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11 MD 2262 (NRB), 2014 WL 2815645 (S.D.N.Y. June 23, 2014) ("*LIBOR III*")... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  935 F. Supp. 2d 666 (S.D.N.Y. 2013) ("*LIBOR I*") ....................................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   962 F. Supp. 2d 606 (S.D.N.Y. 2013) ("*LIBOR II*") ........................................................ *passim*

*In re Processed Egg Prods. Antitrust Litig.*,
   821 F. Supp. 2d 709 (E.D. Pa. 2011) ................................................................. 17

*In re Tri-State Crematory Litig.*,
   215 F.R.D. 660 (N.D. Ga. 2003)........................................................................ 19

*J.W. Thompson Co. v. Welles Prods. Corp.*,
   758 P.2d 738 (Kan. 1988) ................................................................................ 13

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)............................................................................. 13

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)......................................................................................... 19

*Kotlyarsky v. N.Y. Post*,
   757 N.Y.S.2d 703 (N.Y. Sup. Ct. 2003) ......................................................... 24

*Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*,
   942 P.2d 182 (Nev. 1997) .......................................................................... 13, 25

*Levy v. World Wrestling Entm't, Inc.*,
   No. CIV.A.308-01289(PCD), 2009 WL 455258 (D. Conn. Feb. 23, 2009)............................ 19

*Malmsteen v. Berdon, LLP*,
   477 F. Supp. 2d 655 (S.D.N.Y. 2007).............................................................. 20

*Mantiply v. Mantiply*,
   951 So. 2d 638 (Ala. 2006) ............................................................................. 13

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*,
   146 F.3d 983 (D.C. Cir. 1998) ........................................................................ 19

*Maya NY, LLC v. Hagler*,
   965 N.Y.S.2d 475 (N.Y. App. Div. 2013) ...................................................... 20

*Menowitz v. Brown*,
   991 F.2d 36 (2d Cir. 1993)............................................................................... 22

*News World Commc'ns, Inc. v. Thompsen*,
   878 A.2d 1218 (D.C. 2005) ........................................................................ 13, 19

x

*O'Kelly v. Dawson*,
   62 A.3d 414 (Pa. Super. Ct. 2013) ................................................................ 24

*O'Melveny & Myers v. F.D.I.C.*,
   512 U.S. 79 (1994) ............................................................................................ 3

*Orr v. Beamon*,
   77 F. Supp. 2d 1208, 1211 (D. Kan. 1999), *aff'd sub nom. Orr v. BHR, Inc.*, 4 F. App'x 647
   (10th Cir. 2001) ................................................................................................ 6

*Pappas v. Tzolis*,
   982 N.E.2d 576, 580 (N.Y. 2012) ............................................................. 20, 25

*Pearson Educ., Inc. v. Allen Air Conditioning Co.*,
   No. 08 Civ. 6152 (KBF), 2014 WL 2154099 (S.D.N.Y. May 22, 2013) ................................ 4

*Petróleos Mexicanos v. Sk Eng'g & Constr. Co.*,
   No. 13-3175, 2014 WL 3445747 (2d Cir. Jul. 16, 2014) ........................................ 11

*Portfolio Recovery Assocs., LLC v. King*,
   14 N.Y.3d 410 (2010) ..................................................................................... 21

*Renee Unlimited, Inc. v. City of Atlanta*,
   687 S.E.2d 233 (Ga. 2009) ............................................................................. 19

*Richards v. CH2M Hill*,
   111 Cal. Rptr. 2d 87 (Cal. 2001) .................................................................... 24

*Roberts v. Whitfill*,
   191 S.W.3d 348 (Tex. Ct. App. 2006) .............................................................. 6

*State v. Cagno*,
   49 A.3d 388 (N.J. 2012) .................................................................................. 10

*State v. Sparano*,
   592 A.2d 608 (N.J. App. Div. 1991) ................................................................ 10

*Styer v. Hugo*,
   619 A.2d 347 (Pa. Super. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994) ....................... 13

*Swift v. Pandey*,
   Civil No. 13-649 (JLL), 2013 WL 6022093 (D.N.J. Nov. 13, 2013) ...................... 23

*TekDoc Servs., LLC v. 3i-Infotech Inc.*,
   CIV. A. No. 09-6573(MLC), 2013 WL 2182565 (D.N.J. May 20, 2013) ................ 22

*Tolbert v. Connecticut Gen. Life Ins. Co.*,
   257 Conn. 118 (2001) ........................................................................... 19

*Unionamerica Mortg. & Equity Trust v. McDonald*,
   97 Nev. 210, 212 (1981) ...................................................................... 19

*United Teamster Fund v. MagnaCare Admin. Servs.,LLC*,
   No. 13 Civ. 6062 (WHP), 2014 WL 4058070 (S.D.N.Y. Aug. 14, 2014)............... 20

*VRG Corp. v. GKN Realty Corp.*,
   641 A.2d 519 (N.J. 1994)...................................................................... 13

*Waldrup v. Countrywide Fin. Corp.*,
   No. 2:13-cv-08833-CAS (CWx), 2014 WL 1463881 (C.D. Cal. Apr. 14, 2014)............ 23

*Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*,
   Civ. No. 08-5380(JLL), 2009 WL 4730187 (D.N.J. Dec. 3, 2009)...................... 23

*Westernbank Puerto Rico v. Kachkar*,
   No. 07-cv-1606 (ADC) (BJM), 2009 WL 6337949 (D.P.R. Dec. 10, 2009),
   *adopted at* No. 07-cv-1606 (ADC), 2010 WL 1416521 (D.P.R. Mar. 31, 2010)........... 25

*Wiley v. Stipes*, 5
   95 F. Supp. 2d 179 (D.P.R. 2009)............................................................ 14

*Wilson Area Sch. Dist. v. Skepton*,
   586 Pa. 513 (2006) .............................................................................. 25

*Zavala v. TK Holdings, Inc.*,
   No. B168634, 2004 Cal. App. Unpub. LEXIS 11350 (Dec. 16, 2004) .................... 13

STATUTES & RULES

12 U.S.C. § 1821(d)(14) ............................................................................. 21

12 U.S.C. § 1821(d)(14)(C) ........................................................................ 21

18 U.S.C. § 1341 .................................................................................... 11

18 U.S.C. § 1343 .................................................................................... 11

18 U.S.C. § 1344(2) ................................................................................ 11

18 U.S.C. § 1962(c) ................................................................................ 10

17B C.J.S. Contracts § 824 .................................................................................. 13

Cal. Code Civ. Proc. § 338(d) .............................................................................. 19

CEA § 22(a) ........................................................................................................... 7

CPLR 202 ........................................................................................................ 20, 22

CPLR § 213(1) ..................................................................................................... 20

CPLR 214(3) ......................................................................................................... 20

Fed. R. Civ. P. 12(e) ............................................................................................ 21

N.J.S.A. 2C:41-2(c) ............................................................................................. 10

# PRELIMINARY STATEMENT

This Court has issued three major opinions in which it ruled on antitrust, CEA, RICO, contract, and unjust enrichment claims asserted in the initially filed actions in the MDL, which were to serve as a guide for the disposition of similar claims in the subsequently filed actions. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 687-89 (S.D.N.Y. 2013) ("*LIBOR I*"); 962 F. Supp. 2d 606, 627 (S.D.N.Y. 2013) ("*LIBOR II*"); 2014 WL 2815645 (S.D.N.Y. June 23, 2014) ("*LIBOR III*").  The Court recently permitted plaintiffs in the stayed Direct Actions[1] to file amended complaints after having the benefit of pre-motion letters submitted by Defendants with respect to the original pleadings.  This memorandum addresses the application of the Court's prior rulings to claims asserted in the Direct Action amended complaints, and seeks dismissal of the claims precluded by those rulings.[2]

Seven Plaintiffs assert antitrust claims that they contend are not barred by the Court's prior rulings.  As detailed below, the prior rulings preclude such antitrust claims.  One action, *Amabile*, asserts Commodity Exchange Act ("CEA") claims virtually identical to those asserted

---

[1] Those actions brought by plaintiffs in their individual capacities, as opposed to as representatives of a purported class, are referred to herein as "Direct Actions."  The plaintiffs bringing these Direct Actions are referred to as the "Plaintiffs."

[2] In addition to being precluded by the Court's rulings, Plaintiffs' claims are subject to several additional defenses that have been made in Defendants' prior briefs and that are equally applicable here.  In the interest of brevity, Defendants hereby incorporate these arguments for dismissal set forth at length in their Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Antitrust Claims, June 29, 2012, MDL ECF No. 166 (antitrust); Memorandum of Law in Support of Defendants' Motion to Dismiss the Exchange-Based Plaintiffs' Claims, June 29, 2012, MDL ECF No. 168 (CEA); Memorandum of Law in Support of Defendants' Motion to Dismiss the Schwab Plaintiffs' Amended Complaints, June 29, 2012, MDL ECF No. 169 (RICO); Memorandum of Law in Support of Defendants' Motion to Dismiss OTC Plaintiffs' Second Consolidated Amended Complaint, Nov. 26, 2013, MDL ECF No. 508 (breach of contract/implied covenant of good faith and fair dealing and unjust enrichment); and Barclays Bank PLC's Reply Mem. of Law in Further Support of Mot. to Dismiss at 1-13, MDL ECF No. 231.  Defendants also hereby incorporate the prior briefing on CEA claims set forth in the memoranda at MDL ECF Nos. 362, 419, 427, 473, 479, 534, 548, and 557.  These plaintiffs' claims suffer from the same deficiencies as the lead actions' claims, and their own factual allegations provide an even stronger basis for concluding that any alleged persistent LIBOR suppression was the result of independent conduct, not collusion.

by the Exchange-Based putative class plaintiffs and previously ruled upon by the Court.
Defendants seek the application of the Court's rulings, in particular on the statute of limitations
and standing, to that action as well.  Two other actions, *Bay Area Toll Authority* and *Prudential*,
assert a federal RICO claim and a New Jersey state law RICO claim, respectively.  The former
must be dismissed under *LIBOR I*, and the latter is subject to dismissal under the same rationale.
Numerous Direct Action amended complaints also assert contract and unjust enrichment claims
similar in all material respects to the claims ruled upon in *LIBOR III*.  The same limitations that
the Court held applicable in those rulings should apply to the Plaintiffs, in particular that such
claims may be asserted only by plaintiffs that transacted directly with the defendant or
defendants against which the claims are asserted.  In addition, certain of the Direct Action
contract and unjust enrichment claims are time-barred.

## ARGUMENT

### I.    THE ANTITRUST CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A.    Plaintiffs' Federal Antitrust Claims Fail Under *LIBOR I* and *II*

Most of the Plaintiffs do not dispute that this Court's decisions in *LIBOR I* and *II* bar
their claims, and have either declined to assert antitrust claims[3] or merely seek to preserve them
for appeal.[4]  Seven Plaintiffs (collectively, the "Antitrust Plaintiffs"),[5] however, try to reargue

---

[3] Fannie Mae Am. Compl. ¶ 160 n.127, MDL ECF No. 674; Schwab Am. Compl. ¶ 18, MDL ECF No. 672; Maragos Am. Compl. ¶¶ 79-108, *Maragos ex rel. Cnty. of Nassau v. Bank of America Corp.*, No. 13-cv-02297 (S.D.N.Y.), ECF No. 119; Triaxx Am. Compl. ¶¶ 153-95, MDL ECF No. 663.

[4] Amabile Pre-Motion Letter at 2, *Amabile v. Bank of America Corp.*, No. 13-cv-1700, ECF No. 10; California Municipalities and Houston Pre-Motion Letter at 4, MDL ECF No. 622; City of Philadelphia Pre-Motion Letter at 4, MDL ECF No. 621; Prudential Pre-Motion Letter at 5 n.5, MDL ECF No. 624; Schwab and BATA Pre-Motion Letter at 2, MDL ECF No. 619.

[5] Darby Am. Compl., MDL ECF No. 666; FDIC Am. Compl., *Fed. Dep. Ins. Corp. v. Bank of Am. Corp.*, No. 14-cv-1757 (S.D.N.Y.), ECF No. 23; Freddie Mac Am. Compl., *Fed. Home Loan Mortg. Corp. v. Bank of Am. Corp.*, No. 13-cv-3952 (S.D.N.Y.), ECF No. 61; NCUA Am. Compl., MDL ECF No. 662; Principal Fin. Grp. Am. (….continued)

this Court's prior antitrust rulings, contending their amended claims differ from those previously dismissed because they allege "broader sets of conspirators and agreements," antitrust claims based on a rule of reason analysis, and additional purported anticompetitive effects of Defendants' alleged conduct. *E.g.*, FDIC and Freddie Mac Pre-Motion Letter at 1-2, MDL ECF No. 616.[6] All of these purportedly new allegations, however, have either already been expressly rejected by this Court, or do not alter this Court's prior analysis.

*First*, the Antitrust Plaintiffs' inclusion of the BBA[7] and affiliates of the panel bank Defendants as among the alleged conspirators, and their allegations of additional agreements among the Defendants to manipulate the U.S. Dollar LIBOR ("LIBOR") submissions process do not impact this Court's rulings that plaintiffs failed to plead antitrust injury. *E.g.*, FDIC Am. Compl. ¶¶ 400-02, Freddie Mac Am. Compl. ¶ 3 n.5; Principal Funds Am. Compl. ¶¶ 17, 147. This Court's prior decisions on antitrust injury turned not on the *number* of alleged conspirators or agreements, but rather on the *nature* of the alleged conspiracy, which was to subvert the cooperative LIBOR submission process by making false submissions. Alleging additional defendants and agreements involved in the manipulation of that process does not bring the Plaintiffs any closer to alleging "an arena in which competition occurred, that defendants' conduct harmed such competition, and that plaintiffs suffered injury as a result." *LIBOR II*, 962

---

(continued….)

Compl., MDL ECF No. 664; Principal Funds Am. Compl., MDL ECF No. 663; Salix Am. Compl., ECF No. 668. Some of these Plaintiffs assert antitrust claims against only a subset of the Defendants.

[6] The FDIC and NCUA assert claims not in their regulatory capacity but on behalf of certain private, failed financial institutions for which they respectively serve as receiver and liquidating agent. FDIC Am. Compl. ¶ 3; NCUA Am. Compl. ¶ 5. They are accordingly subject to the same antitrust injury requirement as any private plaintiff. *See O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994) (FDIC "steps into the shoes" of failed banks on whose behalf it serves as receiver).

[7] The "BBA" collectively refers to Defendants British Bankers' Association, BBA Enterprises Ltd., and BBA LIBOR Ltd.

F. Supp. 2d at 627.

*Second*, the Antitrust Plaintiffs' reframing of their antitrust claim as a rule of reason case rather than a *per se* price-fixing claim[8] does not obviate the requirement that they adequately allege antitrust injury.  *Pearson Educ., Inc. v. Allen Air Conditioning Co.*, No. 08 Civ. 6152 (KBF), 2014 WL 2154099, at *6 n.4 (S.D.N.Y. May 22, 2013) ("A showing of antitrust injury is required if the claim is analyzed under the rule of reason or as a *per se* violation.").  Indeed, following this Court's ruling in *LIBOR I*, the OTC Plaintiffs also alleged an antitrust claim based on the rule of reason,[9] and this Court nonetheless held that "none of plaintiffs' new allegations change the outcome reached in [*LIBOR I*]."  *LIBOR II*, 962 F. Supp. 2d at 627.

*Third*, the Antitrust Plaintiffs' purportedly new theories of anticompetitive harm merely reiterate those already rejected by this Court in *LIBOR I* and *II*.  The Antitrust Plaintiffs argue that alleged LIBOR manipulation (1) harmed persons who transacted in LIBOR-based financial instruments (or interest rates more broadly) by rendering the price of LIBOR "artificial" and thereby causing market participants to misprice transactions, *e.g.*, NCUA Am. Compl. ¶ 224; (2) harmed competition among panel banks over their own creditworthiness, *e.g.*, Freddie Mac Am. Compl. ¶ 170; NCUA Am. Compl. ¶ 53-55; FDIC Am. Compl. ¶ 396; and (3) harmed competition over benchmark interest rates, *e.g.*, Freddie Mac Am. Compl., ¶ 173; Darby Am. Compl. ¶ 299.  This Court has already rejected each of these theories.

The first was addressed in *LIBOR I*, where this Court held that, even if persons who transacted in LIBOR-based instruments were *misled* by alleged LIBOR manipulation, "it would

---

[8] *E.g.*, FDIC Am. Compl. ¶¶ 403-38; Freddie Mac Am. Compl. ¶¶ 188-223; Principal Funds Am. Compl. ¶¶ 158-89; Principal Fin. Grp. Am. Compl. ¶¶ 160-87.

[9] OTC Memo. of Law for Leave to Amend at 13-14, MDL ECF No. 334; OTC Proposed Second Am. Compl. ¶¶ 363-68, MDL ECF No. 334-1.

not follow that plaintiffs have suffered antitrust injury." *LIBOR I*, 935 F. Supp. 2d at 688. Because the plaintiffs merely alleged that, by manipulating LIBOR submissions, the Defendant panel banks "subverted [a] cooperative process," plaintiffs' injury "would have resulted from defendants' misrepresentation, not from harm to competition." *Id.* Even if "a change in LIBOR may have altered the baseline from which market actors competed to set the price of LIBOR-based instruments," market participants remained free to buy or sell LIBOR-based instruments at whatever spread to LIBOR they could competitively obtain. *Id.* at 691, 694.

The Antitrust Plaintiffs' second and third theories of anticompetitive harm were expressly rejected in *LIBOR II*, which addressed "new theories for how defendants compete, such as that they compete over their creditworthiness, [or] that they compete to offer customers the best interest rate benchmark on financial instruments[.]" *LIBOR II*, 962 F. Supp. 2d at 627. There, the Court concluded that, "regardless of the creativity they display, none of plaintiffs' allegations make plausible that there was an arena in which competition occurred, that defendants' conduct harmed such competition, and that plaintiffs suffered injury as a result." *Id.* The Antitrust Plaintiffs continue to allege only that the panel bank Defendants submitted false reports, which resulted in an allegedly manipulated LIBOR, but without in any way affecting competition in any relevant market. Market participants remained free to transact or not transact with any Defendant (or any other person) at any interest rate, regardless of Defendants' perceived creditworthiness or the interest rate benchmark used. Antitrust Plaintiffs have not alleged any plausible theory of antitrust liability that cures this fundamental defect. Accordingly, for the reasons discussed by this Court in *LIBOR I* and *II*, the Antitrust Plaintiffs' amended federal antitrust allegations (and the allegations of those Plaintiffs that merely seek to preserve their claims for appeal) fail to state a valid claim for relief.

B.      **Plaintiffs' State Antitrust Claims Also Fail Under the Court's Prior Rulings**

Plaintiffs Bay Area Toll Authority ("BATA"), the City of Houston, the FDIC, the

NCUA, and the Principal Financial Group and Principal Funds (together, the "Principal

Plaintiffs") also allege state antitrust claims under California, New York, Texas, Illinois, and

Kansas law.[10]  These claims fail for the same reasons discussed above.  There can be no antitrust

claim under the laws of any of these states absent plausible allegations of a reduction to

competition and resulting antitrust injury.[11]  The Court has already ruled multiple times that

alleged LIBOR manipulation does not reduce competition or cause antitrust injury.  Accordingly,

these Plaintiffs' state antitrust claims fail.

II.     **THE *AMABILE* PLAINTIFFS' CEA CLAIMS SHOULD BE DISMISSED TO THE
        EXTENT THE COURT DISMISSED THE EXCHANGE-BASED PLAINTIFFS'
        CEA CLAIMS**

The Court has already dismissed as time-barred CEA claims, brought by the putative

class of Exchange-Based Plaintiffs, alleging persistent suppression of LIBOR during Periods 1

and 2—*i.e.,* August 2007 through April 15, 2009.  *LIBOR I*, 935 F. Supp. 2d at 711-12; *LIBOR

III*, 2014 WL 2815645, at *16-19.  Those rulings compel the dismissal of identical CEA claims

---

[10] BATA asserts an antitrust claim under California's Cartwright Act.  BATA Am. Compl. ¶¶ 286-92, MDL ECF No. 673.  This Court already dismissed Cartwright Act claims in *LIBOR I*, 935 F. Supp. 2d at 695, and BATA appears to seek only to preserve its appellate rights, Schwab and BATA Pre-Motion Letter at 2.  City of Houston also appears to agree that this Court's rulings bar its Texas state antitrust claim and seeks only to preserve its right to appeal.  California Municipalities and Houston Pre-Motion Letter at 4, MDL ECF No. 622.

[11] *See Fido's Fences v. Canine Fence Co.*, 672 F. Supp. 2d 303, 319 (E.D.N.Y. 2009) ("New York's Donnelly Act . . . [is] patterned and interpreted in accord with federal antitrust law.  [Plaintiff] can point to no state policy allowing an antitrust plaintiff to proceed under state law where there is no injury to competition."); *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211 (D. Kan. 1999) ("[S]tanding under the Kansas antitrust statutes requires an antitrust injury similar to that required under the Sherman and Clayton Acts."), *aff'd sub nom. Orr v. BHR, Inc.*, 4 F. App'x 647 (10th Cir. 2001); *Holzrichter v. Cnty. of Cook*, 595 N.E.2d 1237, 1243 (Ill. App. Ct. 1992) ("The pleading of a recognized antitrust injury is an essential element of the action [under the Illinois Antitrust Act]. . . ."); *Roberts v. Whitfill*, 191 S.W.3d 348, 354-57 (Tex. Ct. App. 2006) (stating courts "are to construe the Texas Free Enterprise and Antitrust Act in harmony with federal judicial interpretations of comparable federal antitrust statutes" and adopting federal law on antitrust injury).

asserted by the individual plaintiffs in *Amabile*[12] to the extent they allege LIBOR suppression during Periods 1 or 2.[13]

The *Amabile* plaintiffs also assert claims for supposed *episodic, trader-based* manipulation.  The *Amabile* plaintiffs attach two charts to their amended complaint purporting to show dates on which certain of them "transacted [in] Eurodollar futures contracts" when those contracts' "prices were artificial as a result of trader-based manipulation of LIBOR and [plaintiffs'] positions were such that they were injured."  Amabile Am. Compl. ¶ 35.  As the charts show, these claims must be dismissed in substantial part because many of the alleged instances of manipulation are time-barred and/or unsupported by an allegation of "actual damages," as required by CEA § 22(a), 7 U.S.C. § 25(a).  *See LIBOR II,* 962 F. Supp. 2d at 620-24; *LIBOR III,* 2014 WL 2815645 at *7.

*First*, many of the trader-based claims in both charts relate to trades during Periods 1 and 2.  *See* Amabile Am. Compl. Ex. A at 6-9, Ex. B at unnumbered pages 15-19, and are accordingly time-barred under this Court's previous rulings, as explained in the letters submitted by counsel for defendants Rabobank and Lloyds in opposition to the Exchanged-Based Plaintiffs' request to further amend their complaint.  MDL ECF Nos. 609, 611, 652.

*Second*, many claims are unsupported by allegations of actual damages.  "To plead actual

---

[12] Amabile Am. Compl. ¶¶ 476-504.  The plaintiffs in *Amabile* are individual traders who claim injury as a result of "trad[ing] in exchange-based products tied to LIBOR such as Eurodollar futures."  *Id.* ¶ 35.  By definition, they fall within the putative class that the Exchange-Based Plaintiffs seek to represent.  *LIBOR I,* 935 F. Supp. 2d at 683 (Exchange-Based "Plaintiffs seek to represent a class of 'all persons . . . that transacted in Eurodollar futures and options on Eurodollar futures on exchanges such as the CME [during the Class Period] and were harmed by Defendants' manipulation of LIBOR").  *Amabile* is the only action, other than the consolidated Exchange-Based case, in which plaintiffs assert CEA claims.

[13] Similarly, to the extent the *Amabile* plaintiffs allege that the Defendants named in their amended complaint manipulated "LIBOR as the commodity underlying Eurodollar futures contracts," Amabile Am. Compl. ¶¶ 17-19, their claims must be dismissed for lack of standing for the reasons the Court stated in *LIBOR I,* 935 F. Supp. 2d at 719-21.

damages based on [day-to-day, trader-based] manipulation, plaintiffs would need to allege that the resulting artificiality in LIBOR caused them injury, *in light of their trading of Eurodollar futures contracts*." *LIBOR II*, 962 F. Supp. 2d at 620 (emphasis added); *see LIBOR III*, 2014 WL 2815645, at *7. The first chart provided by the *Amabile* plaintiffs—Exhibit A—sets forth, among other things, the "direction of the alleged request" for an artificial LIBOR submission by a panel bank Defendant, Amabile Am. Compl. ¶ 35, and, in most cases, the plaintiff's trading position (*e.g.,* as seller claiming injury from upward manipulation). In several cases, however, there is no allegation that a plaintiff had a trading position adverse to the alleged manipulation. *See LIBOR II*, 962 F. Supp. 2d at 620-24.[14] In many cases, moreover, plaintiffs do not allege that the misconduct concerns the 3-month tenor of U.S. Dollar LIBOR. *See id.* at 623-24.[15] And in some cases, the alleged misconduct mathematically could not have impacted the published LIBOR. *See LIBOR III*, 2014 WL 2815645, at *7.[16] In each of these instances, the plaintiffs fail to plead actual damages as required by the CEA and consistent with the Court's prior rulings.

---

[14] As to Rabobank, these are the entries with respect to: 9/15/2006; 9/18/2006; 9/19/2006; 9/20/2006; and 9/21/2006. As to Barclays, these are the entries with respect to: 11/22/2005; 2/7/2006; 2/8/2006; 2/9/2006; 2/10/2006; 2/13/2006; 2/14/2006; 2/16/2006; 2/17/2006; and 12/14/2006. For the trades between 2/7/2006 and 2/17/2006, Plaintiffs misrepresent the direction of the purported trader request described in Barclays' regulatory settlements. For 11/22/2005 and 12/14/2006, Plaintiffs allege a trade on the date that the purported trader request was transmitted. But Plaintiffs ignore that Barclays' regulatory settlements clearly state that the requests themselves concerned LIBOR fixings on a different day.

[15] As to Barclays, these are the entries with respect to: 9/28/2005, 11/14/2005 and 3/17/2008. As to Rabobank, these are the entries with respect to: 8/2/2005; 9/1/2006; 9/15/2006; 9/18/2006; 9/19/2006; 9/20/2006; 9/21/2006; 12/1/2006; and 3/19/2007. In addition, for 8/2/2005, Plaintiffs allege a trade on the date that the purported trader request was transmitted. But Plaintiffs ignore that the CFTC Order regarding Rabobank indicates that the cited communication concerned the LIBOR fixing on a different day. As to RBS, these are the entries with respect to: 3/9/2010; 3/10/2010; 3/11/2010; 3/12/2010; 3/15/2010; 3/16/2010; 3/17/2010; and 3/18/2010.

[16] As to Barclays, these are the entries with respect to: 12/14/2006; 12/19/2006; 12/21/2006; 11/28/2007; 11/29/2007; 9/18/2008; and 10/8/2008. For 11/29/2007, Plaintiffs have misrepresented Barclays' 1m USD LIBOR submission as being in the lower quartile; in fact, Barclays' submission was tied for the highest submission that day and therefore could not have possibly harmed Plaintiffs by lowering 1m USD LIBOR, even if such an injury was otherwise alleged. As to Rabobank, these are the entries with respect to: 8/16/2006; 9/15/2006; 9/18/2006; 9/19/2006; and 3/19/2007. On each of those dates, Rabobank's submission could not have affected the middle eight submissions used to calculate LIBOR because twelve or more banks made identical submissions.

The second chart—Exhibit B—omits plaintiffs' trading positions (as sellers or buyers) entirely, on the theory that whenever manipulation "occurred, a plaintiff trading on that date was harmed *even if that plaintiff trad[ed] in the same direction as the offending bank or* if that plaintiff *netted out his position*."  Amabile Am. Compl. ¶ 35 (emphasis added).  The *Amabile* plaintiffs' theory, however, is contrary to the CEA and has been rejected by this Court.  In *LIBOR II*, the Court required CEA plaintiffs to plead facts showing "that their positions were such that they were injured," as it is "almost tautological" that one component of the statute's "actual harm" requirement is whether their "positions were such that plaintiffs were benefited by the manipulation or harmed by it."  962 F. Supp. 2d at 621 & n.18.  As a result, the Court concluded that plaintiffs lacked standing to assert CEA claims where they failed to allege the direction of their own trading.  *Id.* at 621-23; *see also LIBOR I*, 935 F. Supp. 2d at 714 (to state a CEA claim, alleged "manipulation must cause the plaintiff 'actual damages,' which courts have understood to require a 'net loss'" (citations and punctuation omitted)).  Because the *Amabile* plaintiffs fail to allege "that the artificiality was adverse to their position," *id.* at 622, *all* of the Exhibit B allegations (except to the extent they merely repeat claims by particular plaintiffs included in Exhibit A) fail as a matter of law.

## III.   PLAINTIFFS' RICO CLAIMS MUST BE DISMISSED

Plaintiffs in *Prudential Investment Portfolios 2 v. Bank of America Corp.*, No. 14-cv-1489 ("Prudential"), assert a Racketeer Influenced Corrupt Organizations ("RICO") claim under New Jersey law.[17]  In *LIBOR I*, however, this Court dismissed the Schwab plaintiffs' federal

---

[17] Additionally, BATA asserts a federal RICO claim.  BATA Am. Compl. ¶¶ 266-85.  That claim is barred by *LIBOR I* on both extraterritoriality grounds and by the PSLRA RICO amendment, *see LIBOR I*, 935 F. Supp. 2d at 730-34 (holding, *inter alia*, PSLRA RICO amendment bars RICO claims based on transactions in both securities and "non-security financial instruments" because alleged manipulation affected both securities and non-securities transactions), and BATA itself acknowledges that it "expect[s] the Court is not inclined to reconsider its [RICO] ruling."  BATA and Schwab Pre-Motion Letter at 2.

RICO claim on extraterritoriality grounds because the alleged activities of the RICO enterprise occurred in England.  *LIBOR I*, 935 F. Supp. 2d at 733-34.  The Court's reasoning in *LIBOR I* extends *a fortiori* to the Prudential plaintiffs' New Jersey's RICO claim.

Because New Jersey's RICO statute is "modeled upon its federal counterpart, it is appropriate to accept guidance from the federal RICO cases."  *State v. Cagno*, 49 A.3d 388, 400 (N.J. 2012) (alterations, internal quotation marks, and citations omitted); *see also State v. Sparano*, 592 A.2d 608, 614 (N.J. App. Div. 1991) ("The [New Jersey RICO] Act essentially incorporated relevant federal case law with respect to the federal act.").  Like its federal counterpart, the New Jersey RICO statute is silent as to any extraterritorial application—indeed, even more so, as federal RICO at least contains a reference to "foreign commerce" not present in the New Jersey RICO statute.[18]  Moreover, New Jersey shares with federal law the similar "well-settled principle" regarding extraterritoriality that "New Jersey law regulates conduct in New Jersey, not outside the state."  *Archut v. Ross Univ. Sch. of Veterinary Med.*, No. 10-1681 (MLC), 2012 WL 5867148, at *12 (D.N.J. Nov. 19, 2012) (quoting *Buccilli v. Timby, Brown & Timby*, 660 A.2d 1261, 1263 (N.J. App. Div. 1995)).  Absent any textual indication to the contrary, the New Jersey RICO statute should be interpreted in conformity with this Court's interpretation of its federal counterpart in *LIBOR I*, and should not be applied extraterritorially to activities that occurred in England.

---

[18] *Compare* N.J.S.A. 2C:41-2(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."), *with* 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, *interstate or foreign commerce*, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." (emphasis added)).

Without extraterritorial application, the New Jersey RICO statute cannot prohibit the conduct alleged by Prudential.  As this Court stated in *LIBOR I*, "the most natural way to apply RICO to the factual circumstances" of this case is "to allege that the BBA's LIBOR-setting process had been corrupted by defendants and used to carry out a pattern of racketeering activity," which would have involved "collective action of defendants . . . centered on the BBA," in England.  *LIBOR I*, 935 F. Supp. 2d at 733-34.  Prudential does not allege that any aspect of this alleged corruption of the LIBOR-setting process occurred in New Jersey; indeed, it does not allege that Defendants engaged in any conduct in New Jersey.  To the contrary, it alleges that the alleged conspiracy to manipulate LIBOR was a "cartel . . . in London."  Prudential Compl. ¶ 46 (quoting RBS CFTC Order at 14-15); *see also id.* ¶ 125.  It follows that Prudential's claim under New Jersey RICO, like Schwab's earlier claim under federal RICO, "rests on an impermissible extraterritorial application of the RICO statute."  *LIBOR I*, 935 F. Supp. 2d at 731.[19]

Applying New Jersey RICO extraterritorially to regulate Defendants' allegedly manipulative LIBOR submissions process would also run afoul of the Commerce Clause.  The Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the state." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 170 (2d Cir. 2005) (quoting *Healy*

---

[19] The Second Circuit's decision in *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014), does not alter this result. The Second Circuit's holding that federal RICO claims can reach foreign conduct in some circumstances is limited to when "liability or guilt could attach to extraterritorial conduct under the relevant RICO predicate." *Id.* at 136.  None of the statutes governing Prudential's alleged predicate violations, however, express any intent to apply extraterritorially. *See* 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344(2) (bank fraud); *see also RJR Nabisco*, 764 F.3d at 139-143 (concluding that mail and wire fraud statutes do not overcome the presumption against extraterritoriality). Moreover, and unlike *RJR Nabisco*, plaintiffs do not allege domestic conduct that would allege "every essential element to prove a violation" of these statutes—to the contrary, the only connection to New Jersey alleged is that Prudential happens to be located there. *Id.* at 142; *see also Petróleos Mexicanos v. Sk Eng'g & Constr. Co.*, No. 13-3175, 2014 WL 3445747, at *1-2 (2d Cir. Jul. 16, 2014) (affirming dismissal of RICO wire fraud claim as extraterritorial where "[t]he activities involved in the alleged scheme … took place outside of the United States").

11

*v. Beer Inst.*, 491 U.S. 324, 336 (1989)).  For example, in *American Libraries Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997), the court held a New York statute prohibiting sexually explicit content on the Internet to be "per se violative of the Commerce Clause" because it regulated Internet sites merely because they were accessible to New Yorkers and despite the fact that the sites may have been legal in the states in which the sites were operated.  *Id.* at 177.  The same is true here.  Like a picture posted on the Internet, the published LIBOR could be used anywhere in the world, including New Jersey, and it is on that basis alone that Prudential effectively seeks to subordinate the laws of other jurisdictions, including those of foreign countries, to New Jersey's RICO statute.  Such an attempt at extraterritorial application of New Jersey law "is per se violative of the Commerce Clause," and Prudential's RICO claim must be dismissed for this reason as well.  *Id.*; *see also Backpage.com, LLC v. Hoffman*, No. 13-cv-3952, 2013 WL 4502097, at *11-12 (D.N.J. Aug. 20, 2013) (holding New Jersey statute prohibiting certain out-of-state advertisements seen in New Jersey likely violates the Commerce Clause).

## IV.   PLAINTIFFS' CONTRACT-BASED AND UNJUST ENRICHMENT CLAIMS ARE LIMITED BY *LIBOR III*

In *LIBOR III*, this Court dismissed OTC Plaintiffs' implied covenant and unjust enrichment actions brought against non-counterparty banks.  2014 WL 2815645, at *20.  The core holding for both claims was that there was an "inadequate nexus" between plaintiffs and non-counterparty defendants—defendants that did not deal with plaintiffs and did not make allegedly suppressed LIBOR-related payments to them—to state contract-based or unjust enrichment claims.  *Id.*  As to contract claims, "it is clear that the law requires an agreement between the parties for a defendant to be liable for breach of contract."  *Id.*  As to unjust enrichment, "[t]he essence of [an unjust enrichment] claim is that one party has received money

or a benefit at the expense of another." *Id.* at *21 (second alteration in original) (internal quotation marks omitted) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)).

While this Court decided *LIBOR III* under New York law, its reasoning is generally applicable to all Plaintiffs' contract-based and unjust enrichment claims.  It is black-letter law across the country that a plaintiff cannot assert a claim for breach of contract against a party with which it has no contract.  17B C.J.S. Contracts § 824.  Similarly, it is a universal requirement of unjust enrichment that the defendant be unjustly enriched *at the plaintiff's expense*.[20]  Thus, it is

---

[20] *E.g.*, *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006) ("In order for a plaintiff to prevail on a claim of unjust enrichment, the plaintiff must show that the defendant holds money which belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." (emphasis and internal quotation marks omitted)); *Zavala v. TK Holdings, Inc.*, 2004 Cal. App. Unpub. LEXIS 11350, at *38 (Dec. 16, 2004) ("To be enriched, one must have received a benefit, that is, an advantage, from another."); *Bolmer v. Kocet*, 507 A.2d 129, 138 (Conn. App. 1986) ("[Unjust enrichment's] three basic requirements are (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (internal quotation marks omitted)); *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) ("For [the plaintiff] to recover on a quasi-contractual claim, he must show that [the defendant] was unjustly enriched at his expense . . . ."); *Engram v. Engram*, 463 S.E.2d 12, 15 (Ga. 1995) ("Unjust enrichment applies when as a matter of fact there is no legal contract . . ., but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." (alterations and internal quotation marks omitted)); *Coleman v. Coleman*, 949 N.E.2d 860, 866 (Ind. Ct. App. 2011) ("To prevail on a claim of unjust enrichment, a plaintiff must establish that it conferred a measurable benefit on the defendant under circumstances in which the defendant's retention of the benefit without payment would be unjust." (citations omitted)); *Fortech, L.L.C. v. R.W. Dunteman Co.*, 852 N.E.2d 451, 462-63 (Ill. App. 2006) ("A plaintiff may recover under the theory of unjust enrichment if the defendant unjustly retained a benefit to plaintiff's detriment, and defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience." (internal quotation marks omitted)); *J.W. Thompson Co. v. Welles Prods. Corp.*, 758 P.2d 738, 745 (Kan. 1988) ("The basic elements on a claim based on a theory of unjust enrichment are threefold: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."); *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("The essential elements of quasi contract are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit of the value thereof."); *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) ("The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."); *Apostolos Grp., Inc. v. Josephson*, 2002 WL 242111, at *1 (Ohio Ct. App. 2002) ("To recover under the theory of unjust enrichment, the plaintiff must prove the following elements: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment."); *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993) ("The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." (internal quotation marks omitted)), *aff'd*, 637 A.2d 276 (Pa. 1994); (….continued)

not sufficient to allege generally that Defendants[21] profited from, and that Plaintiffs were harmed by, alleged LIBOR manipulation; Plaintiffs must allege specifically and for each relevant transaction that their loss was a particular Defendant's gain.

Many Plaintiffs, however, bring unjust enrichment claims not only against their alleged swap or other counterparties, but against *all* Defendants (other than the BBA).  *E.g.*, City of Houston ¶ 505; Schwab Am. Compl. ¶¶ 358-65; NCUA Am. Compl. ¶¶ 303-07.[22] Prudential Am. Compl. ¶¶ 441-53; Amabile Am. Compl. ¶¶ 510-13.  All such unjust enrichment claims against non-counterparty Defendants fail and must be dismissed.

### A.   Claims Alleged Against Certain Defendants in Their Capacity as Underwriters or Broker-Dealers Do Not Allege a Counterparty Relationship Within the Meaning of *LIBOR III*

In an attempt to shoehorn their claims into the strictures of this Court's holding in *LIBOR III*, certain Plaintiffs allege contract-based and/or unjust enrichment claims against certain Defendants based not on the Defendant's status as a counterparty making LIBOR-linked payments to the Plaintiff, but rather based on the Defendant's status as underwriter of an offering or broker-dealer in a transaction for LIBOR-based financial instruments.  *E.g.*, Principal Fin. Grp. Am. Compl. ¶ 217.  Such claims fail, however, as they allege no relationship involving payment of a LIBOR-based rate by Defendants.  *E.g.*, *id.* ¶ 219 (alleging plaintiff's "Bond

---

(continued….)

*Wiley v. Stipes*, 595 F. Supp. 2d 179, 188 (D.P.R. 2009) ("The elements of an unjust enrichment claim are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." (internal quotation marks omitted)); *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.").

[21] The Plaintiffs' amended complaints do not assert contract and unjust enrichment claims against the BBA.

[22] NCUA lists two non-existent entities, "Credit Suisse Group International" and "Rabobank International" as defendants in the caption of its complaint.  "Rabobank International" is the name by which Rabobank is referred outside of the Netherlands, but is not a legal entity separate from Rabobank.  These entities should be dismissed.

Agreement . . . provides that Plaintiffs will receive a rate tied to USD Libor" without specifying *from whom* that rate is to be received).  Underwriters and broker-dealers of LIBOR-based instruments serve merely as LIBOR-neutral intermediaries in a transaction between the issuer and purchaser of a financial instrument.  Any change in the LIBOR-based rates paid under the financial instrument redound to the *counterparty* or *issuer*, not the underwriter or broker-dealer, and no Defendant acting as underwriter or broker-dealer is alleged to have received any LIBOR-related payments at any Plaintiff's expense.  Allegations, for example, that Plaintiffs purchased LIBOR-based asset-backed securities underwritten by Defendants are based on a theory of Defendants' alleged "*failure to pay Plaintiffs a rate based on the LIBOR definition*."  *E.g.*, Principal Funds Compl. ¶ 219 (emphasis added).  As mere intermediaries, however, Defendants are not alleged to have paid any Plaintiffs a rate based on LIBOR at all.  Underwriters and broker-dealers are thus not counterparty banks within the meaning of *LIBOR III*, and contract and unjust enrichment claims alleged against them must fail.  *See, e.g.*, *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01-CIV-2272, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) ("[A]ccording to the complaint, PRG was responsible for underwriting the policies between Highlands and Silver Car.  Highlands may not hold PRG liable for breaching a contract to which it was not a party.").  Only if a Plaintiff has plausibly alleged that the Defendant acted as a counterparty making LIBOR-based payments to the Plaintiff in connection with a particular transaction may a contract-based or unjust enrichment claim based on that transaction proceed.[23]

---

[23] Insofar as certain Direct Action amended complaints obfuscate whether Defendants served as an actual counterparty to the Plaintiff as opposed to a mere underwriter or broker-dealer, such allegations fail to give Defendants fair notice of Plaintiffs' claims and should be dismissed as well.  *See, e.g.*, Schwab Am. Compl. ¶¶ 12, 273-75, 340-45 (alleging contract-based and unjust enrichment claims arising out of alleged USD LIBOR manipulation based on "LIBOR-based financial instruments sold by Defendants," only "some of which" are alleged to be issued by Defendants, and without providing any details regarding individual transactions); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F.Supp.2d 155, 183 (S.D.N.Y. 2009) ("[P]laintiff must provide (….continued)

**B.      Claims Not Based on Transactions with Panel Banks Must Be Dismissed**

A number of amended complaints assert claims against panel banks because of transactions with affiliates.  Similarly, a number of amended complaints purport to allege claims against affiliates of panel banks based on alleged misconduct by the panel banks themselves.  All such claims impermissibly attempt to conflate the identity of separate corporate entities and must be dismissed.

In an October 8, 2014 Order, the Court held that, because the named OTC Plaintiffs "alleged only that one of [them] had contracted with [Credit Suisse International]," and did not allege a contract with Credit Suisse Group AG, claims against the latter did not survive.  Order, MDL ECF No. 682, at *2.  Under this Court's order, contract and unjust enrichment claims survive only to the extent they are alleged against counterparties—the actual entities with which the Plaintiff dealt—and not with corporate affiliates of those counterparties.  Thus, all claims against Defendants who are mere affiliates of counterparties must be dismissed.  *E.g.*, City of Philadelphia Compl. ¶¶ 20, 26, 409-14, 421-31, 454-72, Exs. D-E (alleging contract-based and unjust enrichment claims against J.P. Morgan Chase & Co. relating to a contract with JPMorgan Chase Bank, N.A.).

Similarly, several Plaintiffs allege contract and unjust enrichment claims against the counterparties with which they actually dealt, but without regard to the fact that their counterparty was an affiliate of a LIBOR panel bank and not actually on the LIBOR panel itself.  *E.g.*, Principal Fin. Grp. Am. Compl. ¶¶ 200-23 & Ex. A-B (alleging contract-based claims against non-panel bank Defendants, including Merrill Lynch Capital Services, Inc., Credit Suisse

---

(continued….)

specific allegations as to the agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." (footnote and internal quotation marks omitted)).

International, and RBS Securities, Inc.).  This Court previously declined to dismiss contract or unjust enrichment claims against counterparty banks insofar as plaintiffs had "adequately alleged that *defendants'* alleged manipulation of LIBOR was at least in reckless disregard of the potential harm to OTC plaintiffs."  *LIBOR III*, 2014 WL 2815645, at *24 (emphasis added). This holding rested on the premise that Plaintiffs' particular counterparties *were involved* in alleged LIBOR suppression.  Yet Plaintiffs have alleged contract and unjust enrichment claims arising out of LIBOR manipulation against numerous affiliates of panel banks that were not themselves on the LIBOR panel, and Plaintiffs do not allege any facts suggesting that those affiliates were involved in, or even had knowledge of, the alleged LIBOR manipulation at the time of the alleged transactions (or otherwise).  Rather, Plaintiffs' claims against non-panel banks are based on the sweeping and unsupported assumption that any entity affiliated with a panel bank was itself engaged in alleged LIBOR suppression, and such threadbare allegations cannot survive a motion to dismiss.  *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (conclusory allegations that affiliated companies conspired, had an agency relationship, or aided and abetted wrongdoing of the other insufficient to survive a motion to dismiss).  Because such lumping of defendants together constitutes impermissible group pleading,[24] Plaintiffs' claims against non-panel bank Defendants must be dismissed.[25]

---

[24] *Concord Assocs., L.P. v. Ent'mt Props. Trust*, No. 12 Civ. 1667 (ER), 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014) ("Group pleading, by which allegations are made against families of affiliated entities is simply insufficient to withstand review on a motion to dismiss."); *see also, e.g.*, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417 (S.D.N.Y. July 18, 2011) (dismissing claim against parent company where "complaint alleges direct involvement of the Parent Companies by way of generic references to 'defendants'"); *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 746-49 (E.D. Pa. 2011) (rejecting "single enterprise" theory of liability and dismissing claims against corporate affiliates not alleged to have been directly involved in the alleged wrongdoing).

[25] Dismissal is *a fortiori* required with respect to claims based on contracts with Merrill Lynch and Bear Stearns affiliates that predate those entities being acquired by Bank of America and J.P. Morgan, respectively, as those Defendants were not even *affiliated* with LIBOR panel banks at the time of the contract.  The fact that Merrill Lynch and Bear Stearns affiliates were *later* acquired by panel bank affiliates cannot make them retroactively liable (….continued)

Moreover, to the extent that certain Plaintiffs do not specify the corporate affiliate with which they dealt, *e.g.*, California Municipalities Compl. ¶¶ 402, 409 (alleging purchases of "bank notes issued by Defendant Bank of America" without specifying the issuing affiliate), or which Defendants they dealt with at all, *e.g.*, Schwab Compl. ¶ 276, these Plaintiffs similarly engage in impermissible group pleading and their claims against all Defendants not specifically alleged to have transacted with the Plaintiff must be dismissed.  *Concord*, 2014 WL 1396524, at *24; *see generally Holmes v. Allstate Corp.*, No. 11 Civ. 1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it."), *adopted by* 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012).[26]

## V.   CONTRACT-BASED AND UNJUST ENRICHMENT CLAIMS THAT ARE TIME-BARRED MUST BE DISMISSED

### A.    Certain Contract-Based and Unjust Enrichment Claims are Time-Barred

An action for breach of contract or the implied covenant of good faith and fair dealing accrues when the contract is breached, and an unjust enrichment action almost universally accrues when the defendant receives a benefit from the plaintiff that it would be unjust to retain. *E.g.*, *ABB Indus. Sys. v. Prime Tech.*, 120 F.3d 351, 360 (2d Cir. 1997) (contract); *Elliott v.*

---

(continued….)
for conduct in which they could not plausibly have been involved. *See, e.g.*, California Municipalities Am. Compl. ¶¶ 404-05, 428-32, 445, 458-61 (alleging claims against Bank of America and JPMorgan arising out of swap agreements with Merrill Lynch Capital Services, Inc. and Bear Stearns Capital Markets, Inc.); Principal Fin. Am. Compl. ¶ 203 (Merrill Lynch Capital Services, Inc. and Bear Stearns Bank PLC).

[26] To the extent that Plaintiffs allege claims for "civil conspiracy" to breach contracts or receive unjust enrichment, they are subject to dismissal for the same reasons. *See LIBOR III*, 2014 WL 2815645, at *21-22. Additionally, to the extent that Plaintiffs allege claims for breach of contract rather than breach of the implied covenant of good faith and fair dealing, those claims must be dismissed against *all* Defendants under *LIBOR II*. 962 F. Supp. 2d at 631 n.31 ("[P]laintiffs have not alleged an explicit term in their swap contracts that required the benchmark used to calculate the floating amount to be based on the LIBOR definition. . . . Moreover, given that LIBOR is, by definition, an average of eight banks' submissions to the BBA, no one bank could possibly guarantee that a particular LIBOR fix was determined in a manner that wholly complied with the BBA's rules. Therefore, plaintiffs cannot state a claim for breach of an explicit contractual provision . . . .").

*Qwest Commc'ns Corp.*, 808 N.Y.S.2d 443, 444-45 (N.Y. App. Div. 2006) (unjust

enrichment).[27]  Here, the unjust enrichment claims accrue at the same time as the contract-based

claims, because it is the alleged breach of the contract—the failure to make a "correct" LIBOR-

based payment under the contract—that allegedly unjustly enriched the defendants.  Because the

alleged breaches for many of the contracts cited in the Direct Action amended complaints

predate the filing dates of the complaints by more than the applicable state limitations period, the

associated contract and unjust enrichment claims are time-barred.

### 1.    Claims Subject to New York Law

A federal court exercising supplemental jurisdiction over state-law claims applies the law

of the forum state, including its choice of law principles.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*,

313 U.S. 487 (1941).  Five sets of Plaintiffs—Salix, FDIC, the *Amabile* plaintiffs, Darby

Financial Products, and Fannie Mae—brought suit in New York and one set—the Principal

Plaintiffs—has asserted claims under New York state law and must satisfy New York's statutes

of limitations.  New York applies a three-year statute of limitations to unjust enrichment claims

---

[27] *See also AC, Inc. v. Baker*, 622 So. 2d 331, 333 (Ala. 1993) ("[The limitations] period begins to run when the contract is breached."); *Cochran v. Cochran*, 66 Cal. Rptr. 2d 337, 340 (Cal. App. 1997), *as modified* (Aug. 12, 1997) (same); *Tolbert v. Connecticut Gen. Life Ins. Co.*, 257 Conn. 118, 124 (2001) (same); *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 991 (D.C. Cir. 1998) (same); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 681-82 (N.D. Ga. 2003) (same); *Dunn v. Dunn*, 47 Kan. App. 2d 619, 628 (2012) (same); *Bemis v. Estate of Bemis*, 114 Nev. 1021, 1024-25 (1998) (same); *Cnty. of Morris v. Fauver*, 153 N.J. 80, 107 (1998) (same); *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997) (same); *Am. Gen. Life & Acc. Ins. Co. v. Underwood*, 886 So. 2d 807, 813 (Ala. 2004) ("On claims for unjust enrichment . . . a plaintiff may commence a suit as soon as the defendant receives money and the circumstances imply the obligation to restore it."); *Levy v. World Wrestling Entm't, Inc.*, No. CIV.A.308-01289(PCD), 2009 WL 455258, at *4 (D. Conn. Feb. 23, 2009) (similar; *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1223 (D.C. 2005) (similar); *Renee Unlimited, Inc. v. City of Atlanta*, 687 S.E.2d 233, 238 (Ga. 2009) (similar); *Estate of Draper v. Bank of Am., N.A.*, 205 P.3d 698, 715 (Kan. 2009) (similar); *Unionamerica Mortg. & Equity Trust v. McDonald*, 97 Nev. 210, 212 (1981) (similar); *Baer v. Chase*, 392 F.3d 609, 622-23 (similar); *Harry Miller Corp. v. Mancuso Chemicals Ltd.*, 469 F. Supp. 2d 303, 319 (E.D. Pa. 2007) (similar).  Of the relevant jurisdictions, California and Puerto Rico are the only two to use a different accrual rule for unjust enrichment actions.  *See F.D.I.C. v. Dintino*, 84 Cal.Rptr.3d 38, 50-51 (Cal. App. 2008) (citing Cal. Code Civ. Proc. § 338(d)) (holding that an unjust enrichment action accrues when a plaintiff "actually, or reasonably should have, discovered its mistake that resulted in the unjust enrichment"); *Corey Lanuza v. Medic Emergency Specialties, Inc.*, 229 F. Supp. 2d. 92, 98 (D.P.R. 2002) ("The one-year period [for a restitution claim based on a tort] does not begin to run until the plaintiff possesses, or with due diligence would possess, information sufficient to permit suit").

that allege economic injuries, as is the case here.  CPLR 214(3).[28]  Although New York extends

the statute of limitations on such claims to six years when the claim is "based upon the same

facts and pled in the alternative" to a breach of contract claim, *Maya NY, LLC v. Hagler*, 965

N.Y.S.2d 475, 477-78 (N.Y. App. Div. 2013), this Court has held that plaintiffs' contracts do not

"govern[] the subject matter" of plaintiffs' LIBOR manipulation claims and therefore unjust

enrichment claims are not merely pled in the alternative to a contract claim. *See LIBOR III*, 2014

WL 2815645, at *24-25 (quoting *Pappas v. Tzolis*, 982 N.E.2d 576, 580 (N.Y. 2012));

*Dragushansky v. Nasser*, 2013 WL 4647188, at *8 (S.D.N.Y. Aug. 29, 2013) (stating a plaintiff

can plead breach of contract and unjust enrichment "in the alternative" where "a contract governs

the subject matter at issue").  Accordingly, only the three-year New York limitations period

applies.

Additionally, actions filed by non-New York residents are subject to New York's

"borrowing statute," which subjects plaintiffs' claims to both New York's statute of limitations

and to the statute of limitations of the state where the cause of action accrued.  CPLR 202.[29]  In

cases for monetary injury such as this, the cause of action accrues where the plaintiff resides and

---

[28] *See also United Teamster Fund v. MagnaCare Admin. Servs., LLC*, 2014 WL 4058070, at *12 (S.D.N.Y. Aug. 14, 2014) ("New York's statute of limitations for unjust enrichment claims is three years where a plaintiff seeks monetary relief and six years for equitable relief.").  While New York law applies a six year statute of limitations for those unjust enrichment claims that seek equitable relief, CPLR 213(1), the six year period does not apply here because the claims, as pled, primarily seek damages.  To the extent that equitable relief is sought in the form of a constructive trust, it is inadequately pled because none of the complaints includes the essential allegation that there was a fiduciary relationship between Plaintiffs and any of the Defendants.  *See Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 668-69 (S.D.N.Y. 2007); *see generally In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir. 1992) ("Under New York law, a party claiming entitlement to a constructive trust must ordinarily establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.").

[29] Amabile Am. Compl. ¶¶ 36-54 (Illinois residents); Darby Am. Compl. ¶ 18 (principal place of business is Pennsylvania); Fannie Mae Am. Compl. ¶¶ 12, 15 (principal place of business is Washington, D.C.); FDIC Am. Compl. ¶ 9 (banks in receivership located in Alabama, California, Georgia, Illinois, Indiana, Nevada, Ohio, and Puerto Rico); Principal Fin. Am. Compl. ¶¶ 15-17 (principal place of business is Iowa); Principal Funds Am. Compl. ¶¶ 14-15 (same); Salix Am. Compl. ¶ 18 (assignors' principal place of business is Connecticut).

"suffers the economic impact" of the alleged loss.  *See Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416 (2010).  Moreover, to the extent any Plaintiffs allege that their contracts are governed *solely* by New York law by virtue of a generic contractual choice-of-law clause, it is well-settled that such devices do not displace New York's statutes of limitations, including its borrowing statute.  *Id.* at 415-16.  Thus, for example, claims by the FDIC on behalf of Superior Bank ("Superior") accrued in Alabama and are subject to Alabama's statutes of limitations, and its claims on behalf of Westernbank Puerto Rico ("Westernbank") accrued in Puerto Rico and are subject to Puerto Rico's statutes of limitations.  Alabama applies a two-year limitations period and Puerto Rico a one year limitations period to unjust enrichment claims that arise from a tort (like those at issue here),[30] and accordingly, the FDIC's unjust enrichment claims on behalf of these banks are time-barred.[31]  For a full list of claims by Plaintiffs filed in New York or raising New York claims that are barred in whole or in part by statutes of limitations, see Schedules C.2, C.3, L.2 and L.3.[32]

## 2.    Claims Subject to Other States' Laws

A "transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed."  *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993).

---

[30] *See* 12 U.S.C. § 1821(d)(14)(C) (referring to certain unjust enrichment claims as "tort" claims); *Auburn Univ. v. IBM Corp.*, 716 F. Supp. 2d 1114, 1118 (M.D. Ala. 2010) (applying two-year limitations period to a claim arising from conversion of intellectual property); *Corey Lanuza v. Medic Emergency Specialties, Inc.*, 229 F. Supp. 2d, 92, 98 (2002) (applying one-year limitations period for restitution claim based on a tort).

[31] To the extent that any extension of the applicable statute of limitations pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1787(b)(14), 1821(d)(14), applies to the FDIC's and NCUA's claims, the FDIC and NCUA did not file their respective complaints before the statute of limitations expired for certain of its claims, and others are barred even under the extended statute of limitations provided by FIRREA.  *See* Schedules C.3 and L.3.

[32] To the extent that the FDIC alleges claims on behalf of IndyMac Bank F.S.B. ("IndyMac") and Superior between March 14, 2011 and "mid-2011," Defendants  move for a more definite statement of the FDIC's allegations under Fed. R. Civ. P. 12(e).

Plaintiffs filing in Pennsylvania, Virginia, and Ohio—the City of Philadelphia/PICA, Freddie Mac, and CEMA, respectively—are thus subject to their home state's statute of limitations, regardless of any applicable contractual choice-of-law provisions, because these states adhere to the traditional rule that statutes of limitation are "procedural," and hence always to be applied regardless of any contractual agreement otherwise.[33]  These Plaintiffs' claims are barred to the extent described in Schedules C.2, C.3, L.2 and L.3.

Finally, for plaintiffs filing in California (Schwab, BATA, and the California Municipalities) and New Jersey (Prudential), the law of the state where the claim was filed applies for statute of limitations purposes under each state's interest analysis.[34]  Because these Plaintiffs were allegedly injured in the forums in which they brought suit, relevant choice of law rules dictate that the transferor forum's statute of limitations applies.[35]  Indeed, these Plaintiffs filing in these states do not allege that another state's laws control.  The limits imposed on these plaintiffs' claims are described in Schedules C.2, C.3, L.2 and L.3.

In particular, Prudential has failed to state a valid claim for unjust enrichment because "New Jersey law does not recognize unjust enrichment as an independent tort cause of action."

---

[33] *E.g.*, *E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 727 (E.D. Va. 2012) ("In Virginia, the statute of limitations is a procedural issue governed by Virginia law."); *Berg v. Access Grp., Inc.*, 2014 WL 4812331, at *12 at n.11 (E.D. Pa. Sept. 26, 2014) (same for Pennsylvania); *Godwin v. Real Estate Inv. Mgmt., Inc.*, No. 2:00-CV-1402, 2001 WL 1681122, at *3, n.5 (S.D. Ohio Aug. 21, 2001) (same for Ohio).

[34] California applies a governmental interest analysis.  *See, e.g.*, *Carlton v. Hertz Corp.*, 2013 WL 394894, at *2-4 (C.D. Cal. Jan. 28, 2013).  New Jersey applies a significant interest analysis.  *See, e.g.*, *TekDoc Servs., LLC v. 3i-Infotech Inc.*, CIV. A. No. 09-6573 (MLC), 2013 WL 2182565, at *12-13 (D.N.J. May 20, 2013).

[35] *See, e.g.*, *Deutsch v. Turner Corp.*, 317 F.3d 1005, 1028 (2003) ("Where the conflict concerns a statute of limitations, the governmental interest approach generally leads California courts to apply California law."); *Goodman v. Goldman, Sachs & Co.*, 2010 WL 5186180, at *7 (D.N.J. Dec. 14, 2010) ("The location of Plaintiff's residence (or domicile) is an important contact favoring application of New Jersey law.").  New York's borrowing statute would also require application of California's shorter statute of limitations in any event.  CPLR 202.

*Swift v. Pandey*, Civil No. 13-649 (JLL), 2013 WL 6022093, at *6 (D.N.J. Nov. 13, 2013).[36]

Prudential's unjust enrichment claims are based on the premise that it was harmed because it was misled regarding the alleged manipulation of LIBOR—an independent claim that sounds in tort based upon this Court's ruling in *LIBOR III*, 2014 WL 2815645, at *24-25. *See* Prudential Am. Compl. ¶¶ 444-47. Prudential's unjust enrichment claim should therefore be dismissed.[37]

### B.    None of the Alleged Tolling Doctrines Apply

Plaintiffs have alleged an array of state-law tolling doctrines that fail under *LIBOR I* and *III*. These doctrines have various names—fraudulent concealment, equitable tolling, equitable estoppel, and the discovery rule—but all return to similar themes: Plaintiffs' alleged lack of knowledge of the cause of action and Defendants' alleged concealment of wrongdoing. None applies for the reasons that this Court has previously articulated: by at least May 29, 2008, plaintiffs were not, or should not have been, ignorant of the alleged violations, and Defendants' alleged misconduct was not concealed. *LIBOR I*, 935 F. Supp. 2d at 710-11.[38]

---

[36] *See also Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc.*, Civ. No. 08-5380 (JLL), 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (where "Plaintiff's theory of recovery is based on the assertion that it was misled by [Defendant] . . . [s]uch allegations sound in tort"); *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. App. Div. 2004); Defeo v. Check, NO. L-3996-11, 2011 WL 4543681 (N.J. Super. Ct. Sept. 26, 2011).

[37] The choice of law clauses in Prudential's contracts do not prevent application of New Jersey law to Prudential's unjust enrichment claims. They apply only to claims brought pursuant to Prudential's contracts, not to extra-contractual claims. *Compare Bd. of Educ. of Cherry Hill v. Human Res. Microsystems, Inc.*, 2010 WL 3882498, at *4 (D.N.J. Sept. 28, 2010) (applying New Jersey law to unjust enrichment action where choice of law clause in contract provided, "*This Agreement* shall be governed by the laws of the State of California and U.S. Copyright laws. . . .", because the clause "refers only to the law governing the [contract]" (emphasis added)), *with* Prudential Compl. Exs. E-G ("*This Agreement, each Credit Support Document and each Confirmation* will be governed by and construed in accordance with the laws of the State of New York, without reference to its conflict of laws doctrine." (emphasis added)).

[38] *See, e.g., Waldrup v. Countrywide Fin. Corp.*, 2014 WL 1463881, at *5 (C.D. Cal. April 14, 2014) (plaintiffs must "plead with particularity facts showing the plaintiff's inability to have made earlier discovery despite reasonable diligence" (internal quotation marks omitted)). *See also Christy v Miulli*, 692 N.W.2d 694, 702 (Iowa 2005); *Binder v. Price Waterhouse*, 923 A.2d 293, 298 (N.J. Super. 2007) (similar); *O'Kelly v. Dawson*, 62 A.3d 414, 420 (Pa. Super. Ct. 2013) (similar); *Kotlyarsky v. N.Y. Post*, 757 N.Y.S.2d 703, 707-08 (N.Y. Sup. Ct. 2003) (similar); *Diamond v. Davis*, 680 A.2d 364, 380-81 (D.C. 1996) (similar). In some states, plaintiffs must allege that defendant's conduct was intended to hinder lawsuits to allow tolling. *See, e.g., Flick v Wyeth LLC*, 2012 WL 4458181, at *3 (W.D. Va. June 6, 2012). No such allegations are present here.

Plaintiffs also allege an additional cluster of state-law doctrines based on a theory of a single, "continuing violation" that is inapplicable in this context.  The continuing violation doctrine applies in employment discrimination cases and similar contexts where it is sometimes necessary to "aggregate[] a series of wrongs," especially "small harms, any one of which may not be actionable on its own."  *Aryeh v. Canon Bus. Solutions*, 151 Cal. Rptr. 3d 827, 832, 837 (Cal. 2013).[39]  Yet this description demonstrates why the doctrine is inapplicable to the present context, where Plaintiffs allege repeated contractual breaches and related monetary injuries and could have brought suit for any one of them.  Indeed, Defendants are not aware of *any* relevant state that has applied the "continuing violation" doctrine to breach of contract.  Thus, all allegations that LIBOR manipulation amounts to a "continuing violation" for contract and unjust enrichment purposes should be rejected.[40]

## VI.   CERTAIN UNJUST ENRICHMENT CLAIMS ARE BARRED BY THE PARTIES' CONTRACTS

In *LIBOR III*, this Court held that plaintiffs' alleged contracts do not "govern[] the subject matter" of plaintiffs' unjust enrichment claims under New York law.  *LIBOR III*, 2014 WL 2815645, at *24-25 (quoting *Pappas v. Tzolis*, 982 N.E.2d 576, 580 (N.Y. 2012)).  Pennsylvania, Nevada, and Puerto Rico, however, bar unjust enrichment claims not only where the "subject matter" of the claim is governed by a contract, but more broadly where the

---

[39] *See, e.g., Day v. Moscow*, 769 F. Supp. 472,  477 (S.D.N.Y. 1991) ("[The continuing violation] doctrine is usually employed in connection with employment discrimination suits and functions to toll the time to file an action where the defendant has engaged in a continuous policy of discrimination."); *Richards v. CH2M Hill*, 111 Cal. Rptr. 2d 87, 89 (Cal. 2001) (similar); *Hy-Vee Food Stores v. Iowa Civil Rights Comm'n*, 453 N.W.2d 512, 527 (Iowa 1990) (similar); *Bolinger v. Bell Atlantic*, 749 A.2d 857, 860 (N.J. Super. 2000) (similar).  In Pennsylvania, the doctrine is referred to as "continuing tort"—by its very name inapplicable to the Plaintiffs' contract claims.  *See, e.g., Dellape v. Murray*, 651 A.2d 638, 640 ((Pa. Commw. Ct. 1994).

[40] Defendants also hereby incorporate the arguments regarding *American Pipe* tolling appearing at Section III.D of the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss the Tortious Interference Claims in the Direct Actions.

"relationship between the parties" is founded upon an express contract, which is plainly present here. *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 520 (2006).[41]  The Plaintiffs asserting unjust enrichment claims under these states' laws—the City of Philadelphia, Pennsylvania Intergovernmental Cooperation Authority, and the FDIC on behalf of Washington Mutual Bank[42] and WesternBank Puerto Rico—therefore fail to state a claim for relief.[43]

## CONCLUSION

For the foregoing reasons, the Plaintiffs' federal and state antitrust, CEA, federal and New Jersey RICO, and breach of contract claims should be dismissed with prejudice, and the Plaintiffs' unjust enrichment and breach of the implied covenant of good faith and fair dealing claims should be dismissed with prejudice insofar as they are alleged against non-counterparties and/or non-panel banks, are barred by their respective statute of limitations, and/or are otherwise precluded for the reasons stated above.

---

[41] *See also Westernbank Puerto Rico v. Kachkar*, No. 07-cv-1606 (ADC) (BJM), 2009 WL 6337949, at *29 (D.P.R. Dec. 10, 2009), *adopted at* No. 07-cv-1606 (ADC), 2010 WL 1416521 (D.P.R. Mar. 31, 2010) ("[Unjust enrichment] applies only when there is no applicable statute, which is distinct from lack of legal remedy.  Unjust enrichment doctrine does not apply where there exists a legal provision that excludes its application, such as the existence of a contract that expresses the intentions of the parties."); *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) ("[A]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.");

[42] Washington Mutual Bank is a resident of Nevada.  FDIC Compl. ¶ 9(kk).

[43] Defendants also respectfully preserve their position that the Plaintiffs' unjust enrichment claims are barred under the laws of states such as New York, which bar unjust enrichment claims if the parties' contract governs the "subject matter" of the claim, recognizing that this Court concluded otherwise in *LIBOR III*, 2014 WL 2815645, at *24-25.

Dated:   New York, New York
         November 5, 2014

RESPECTFULLY SUBMITTED,

*/s/* Robert F. Wise, Jr.                         */s/* Daryl A. Libow
Robert F. Wise, Jr.                               Daryl A. Libow
Arthur J. Burke                                   Christopher M. Viapiano
Paul S. Mishkin                                   SULLIVAN & CROMWELL LLP
DAVIS POLK & WARDWELL LLP                         1700 New York Avenue, N.W., Suite 700
450 Lexington Avenue                              Washington, D.C.  20006
New York, New York  10017                         Telephone: (202) 956-7500
Telephone: (212) 450-4000                         Fax: (202) 956-6973
Fax: (212) 450-4800                               libowd@sullcrom.com
robert.wise@davispolk.com                         viapianoc@sullcrom.com
arthur.burke@davispolk.com
paul.mishkin@davispolk.com                        *Attorneys for Defendant The Bank of*
                                                  *Tokyo-Mitsubishi UFJ, Ltd.*
*Attorneys for Defendants Bank of America*
*Corporation, Bank of America, N.A., Banc of*
*America Securities LLC, Merrill Lynch & Co.,*
*Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
*Merrill Lynch Capital Services, Inc., and Merrill*
*Lynch International Bank Ltd.*

/s/ Jeffrey T. Scott
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

/s/ Jonathan D. Schiller
Jonathan D. Schiller
Leigh M. Nathanson
Amos Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-2300
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
5301 Wisconsin Avenue NW
Washington, D.C.  20015
Telephone: (202) 237-2727
mbrille@bsfllp.com

*Attorneys for Defendant Barclays Bank plc,
Barclays plc, and Barclays Capital Inc.*

/s/ Andrew A. Ruffino
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Telephone: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Jonathan Gimblett
1201 Pennsylvania Avenue N.W.
Washington, D.C.  20004
Telephone: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com
jgimblett@cov.com

/s/ Michael R. Lazerwitz
Michael R. Lazerwitz
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York  10006
Telephone: (212) 225-2000
mlazerwitz@cgsh.com

*Attorneys for Defendants Citibank, N.A.,
Citigroup Inc., Citigroup Financial
Products, Inc., Citigroup Funding, Inc.,
Citigroup Global Markets Inc., Citigroup
Global Markets Ltd., and Citi Swapco Inc.*

/s/ David R. Gelfand
David R. Gelfand
Sean M. Murphy
MILBANK TWEED HADLEY & McCLOY  LLP
One Chase Manhattan Plaza
New York, New York  10005
Telephone: (212) 530-5000
dgelfand@milbank.com
smurphy@milbank.com

*Attorneys for Defendant Coöperatieve*
*Centrale Raiffeisen-Boerenleenbank B.A.*

/s/ Herbert S. Washer
Herbert S. Washer
Elai Katz
Joel Kurtzberg
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York  10005
Telephone: (212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com

*Attorneys for Defendant Credit Suisse*
*Group AG, Credit Suisse International,*
*Credit Suisse AG, Credit Suisse Securities*
*(USA) LLC, Credit Suisse Securities (USA)*
*Inc.*

/s/ Moses Silverman
Moses Silverman
Andrew C. Finch
Jessica Brach
Noam Lerer
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3355
Fax: (212) 492-0355
msilverman@paulweiss.com
afinch@paulweiss.com
jbrach@paulweiss.com
nlerer@paulweiss.com

*Attorneys for Defendants Deutsche Bank AG and
Deutsche Bank Securities Inc.*

/s/ Ed DeYoung
Ed DeYoung
Gregory T. Casamento
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281
Telephone:  (212) 812-8325
Fax:  (212) 812-8385
edeyoung@lockelord.com
gcasamento@lockelord.com

Roger B. Cowie
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 740-8614
Fax:  (214) 740-8800
rcowie@lockelord.com

*Attorneys for Defendants HSBC Holdings
plc, HSBC Bank plc, The Hongkong and
Shanghai Banking Corporation Ltd., HSBC
USA, Inc., HSBC Finance Corporation,
HSBC Securities (USA,) Inc.,  and HSBC
Bank USA, N.A.* (except in *City of Houston
v. Bank of America Corp., et al.*, S.D.N.Y.
Case No. 1:13-cv-05616)

/s/ Donald R. Littlefield
Donald R. Littlefield (*pro hac vice* motion
pending)
Jack D. Ballard (*pro hac vice* motion
pending)
Michael A. Rodriguez (*pro hac vice*
motion pending)
BALLARD & LITTLEFIELD, LLP
3700 Buffalo Speedway, Suite 250
Houston, Texas 77098
Telephone: (713)403-6400
Fax: (713)-403-6410
dlittlefield@ballardlittlefield.com
jballard@ballardlittlefield.com
mrodriguez@ballardlittlefield.com

*Attorneys for Defendants HSBC Holdings
plc and HSBC Bank plc* in *City of Houston*

*v. Bank of America Corp., et al.*, S.D.N.Y.
Case No. 1:13-cv-05616

/s/ Thomas C. Rice

Thomas C. Rice
Paul C. Gluckow
Omari L. Mason
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017
Telephone: (212) 455-2000
Fax: (212) 455-2502
trice@stblaw.com
pgluckow@stblaw.com
omason@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co.,
JPMorgan Chase Bank, N.A., J. P. Morgan
Securities LLC, J. P. Morgan Markets Limited
(f/k/a Bear, Stearns International Limited), J.P.
Morgan Dublin plc (f/k/a JPMorgan Bank Dublin
plc) (f/k/a Bear Stearns Bank plc), Chase Bank
USA, N.A., and Bear Stearns Capital Markets, Inc.*

/s/ Marc J. Gottridge

Marc J. Gottridge
Lisa J. Fried
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York  10022
Telephone: (212) 918-3000
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com

*Attorneys for Defendants Lloyds Banking
Group plc, Lloyds Bank plc (formerly
known as Lloyds TSB Bank plc) and HBOS
plc*

*/s/* Andrew W. Stern\_\_\_
Alan M. Unger
Andrew W. Stern
Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York  10019
Telephone: (212) 839-5300
Fax: (212) 839-5599
aunger@sidley.com
astern@sidley.com
ncrowell@sidley.com

*Attorneys for Defendant The Norinchukin Bank*

*/s/* Arthur W. Hahn\_\_\_\_
Arthur W. Hahn
Christian T. Kemnitz
Brian J. Poronsky
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois  60661
Telephone: (312) 902-5200
arthur.hahn@kattenlaw.com
christian.kemnitz@kattenlaw.com
brian.poronsky@kattenlaw.com

*Attorneys for Defendant Royal Bank of Canada and RBC Capital Markets LLC*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Alan E. Schoenfeld
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
New York, New York  10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
alan.schoenfeld@wilmerhale.com


/s/ Robert G. Houck
Robert G. Houck
Alejandra de Urioste
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York  10019
Telephone: (212) 878-8000
Fax: (212) 878-8375
robert.houck@cliffordchance.com
alejandra.deurioste@cliffordchance.com

*Attorneys for Defendants The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, Citizens Bank, N.A. f/k/a Charter One Bank, N.A., and RBS Securities Inc.*[44]

/s/ Steven Wolowitz
Steven Wolowitz
Henninger S. Bullock
Andrew J. Calica
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Telephone: (212) 506-2500
Fax: (212) 262-1910
swolowitz@mayerbrown.com
hbullock@mayerbrown.com
acalica@mayerbrown.com

*Attorneys for Defendant Société Générale*

---

[44] Wilmer Cutler Pickering Hale and Dorr LLP is counsel for these defendants except as to plaintiffs Prudential Investment Portfolios 2; Triaxx Prime CDO 2006-2 LTD; Triaxx Prime CDO 2007-1 LTD; Principal Funds, Inc.; Principal Capital Interest Only I, LLC;Principal Commercial Funding, LLC; Principal Commercial Funding II, LLC; Principal Financial Group, Inc.; Principal Financial Services, Inc.; Principal Life Insurance Company; Principal Real Estate Investors, LLC; Principal Variable Contracts Funds, Inc.; and Fannie Mae.  Clifford Chance US LLP is counsel for these defendants except as to Plaintiff the Federal Home Loan Mortgage Corporation.

/s/ Peter Sullivan
Peter Sullivan
Lawrence J. Zweifach
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166-0193
Telephone: (212) 351-4000
psullivan@gibsondunn.com
lzweifach@gibsondunn.com

Joel S. Sanders (*admitted pro hac vice*)
555 Mission Street, Suite 3000
San Francisco, California  94105
jsanders@gibsondunn.com

*Attorneys for Defendant UBS AG and UBS
Securities LLC*

/s/ Christopher M. Paparella
Christopher M. Paparella
Ethan E. Litwin
Marc A. Weinstein
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York  10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
Chris.Paparella@hugheshubbard.com
Ethan.Litwin@hugheshubbard.com
Marc.Weinstein@hugheshubbard.com
Morgan.Feder@hugheshubbard.com

*Attorneys for Defendants Portigon AG
(f/k/a WestLB AG) and Westdeutsche
ImmobilienBank AG*

/s/ Richard D. Owens
Richard D. Owens
Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
richard.owens@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants British Bankers'
Association, BBA Enterprises Ltd., and BBA
LIBOR Ltd.*