# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

February 24, 2015

Via ECF

Hon. Naomi Reice Buchwald,
    Daniel Patrick Moynihan United States Courthouse,
        500 Pearl Street,
            New York, New York  10007-1312.

> Re:    *In re LIBOR-Based Financial Instruments Antitrust Litigation*,
>        Case No. 11-MD-2262 (NRB)

Dear Judge Buchwald:

I write on behalf of all Defendants in response to the letter submitted on February 19, 2015 by an unidentified group of the Direct Action Plaintiffs [Dkt. No. 1026] ("Pls.' Ltr."). In their letter, Plaintiffs try again to do what they could not at the February 5, 2015 hearing:  articulate a limiting principle to the scope of fraud liability contemplated in their complaints.  But the letter identifies no such principle, and instead merely recycles arguments from Plaintiffs' briefs that fail to identify a determinate class of persons whom Defendants had reason to expect would rely upon allegedly false LIBOR submissions.

At the February 5 hearing, the Court asked Plaintiffs' counsel "if there [are] any limiting principles that the plaintiffs acknowledge" regarding the fraud claims they assert against Defendants who did not transact with Plaintiffs.  (Tr. 8:23-9:4.) Plaintiffs acknowledged none.  Instead, Plaintiffs' counsel pointed to Section 531 of the Restatement (Second) of Torts and argued that "[i]t's certainly wide enough to encompass every one of the plaintiffs who have brought lawsuits here."  (Tr. 9:7-15.) The Court aptly responded, "So, for my purposes, no limiting principle."  (Tr. 9:16-17.)

Plaintiffs' letter adds nothing to their earlier response.  It asserts that Section 531's "reason to expect" standard should have limitless reach, arguing that— because LIBOR was a widely-used financial benchmark incorporated into third-party transactions around the globe—anyone, anywhere, who suffered "losses arising from financial instruments that incorporated LIBOR" can state a claim for fraud. (Pls.' Ltr. at 1-3.)  Plaintiffs candidly admit that, under their reading of the "reason to expect" standard, even parties "who may not have had LIBOR-linked investments" could state

Hon. Naomi Reice Buchwald                                                                    -2-

claims against Defendants.  (*Id.* at 3 n.7.)  But Plaintiffs cite no authority to support this
overly-expansive view of fraud liability.[1]

        As Defendants demonstrated in their moving papers (*see* Defs.' Fraud
Mem. at 23-25 [Dkt. No. 756]; Defs.' Fraud Reply at 8-9 [Dkt. No. 926]), absent a
transactional relationship, courts interpret the "reason to expect" standard "narrow[ly]" in
order to "foreclose the potential for 'unlimited liability.'"  *Ernst & Young, LLP v.
Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 580 (Tex. 2001).  Plaintiffs' suggestion that this
Court employ a vastly broader interpretation does not square with how courts read
Section 531.  To permit anyone in the world to bring fraud claims against Defendants
with whom they had no transactional relationship, simply because those persons might
incorporate LIBOR into transactions with third parties, would eviscerate the scienter
requirement.  *See, e.g., Ernst & Young, LLP*, 51 S.W.3d at 580; *see also Roman v.
Delta Air Lines, Inc.*, 441 F. Supp. 1160, 1167 (N.D. Ill. 1977) ("To allow recovery
without any limitation on third persons would create the possibility of an indeterminate
liability totally disproportionate to the notion of fault involved.").  Plaintiffs' continued
inability to articulate any reasonable limit on their fraud claims underscores that they are
impermissibly broad.

                           Respectfully submitted,

                           /s/ Jeffrey T. Scott

cc:     All counsel of record (via ECF)

---

[1] Plaintiffs' attempt to distinguish *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 786 F. Supp.
2d 1202 (S.D. Tex. 2009), by arguing that defendants there "truthfully reported" price information, is
unavailing.  That court's scienter holding did not turn on whether defendants' price reports, which allegedly
reflected the impact of manipulative trading, were "true." *Id.* at 1210.  Rather, it turned on the absence of
any "allegation[] that specifically connect[ed] [d]efendants' purported misstatements to [plaintiff]." *Id.*